277 So.2d 175 (1973)
P. L. CARNEY, Plaintiff Appellee,
v.
LIBERTY MUTUAL INSURANCE COMPANY et al., Defendants Appellants.
No. 4140.
Court of Appeal of Louisiana, Third Circuit.
April 25, 1973.
Rehearing Denied May 24, 1973.
*177 James A. Bolen, Jr., Alexandria, for defendants-appellants.
Kramer & Kennedy by Ralph W. Kennedy, Jr., Gist, Methvin & Trimble by H. B. Gist, Jr., Alexandria, for plaintiff-appellee.
Before SAVOY, MILLER and DOMENGEAUX, JJ.
MILLER, Judge.
Defendants Glaser Construction Company, Inc. and its insurer Liberty Mutual Insurance Company appeal the trial court judgment awarding total and permanent workmen's compensation disability benefits and penalties to plaintiff P. L. Carney. Defendants also appeal from the summary judgment which dismissed their third party claim against P. L. Carney Construction Company's insurer Employers Mutual Liability Insurance Company of Wisconsin, and from the denial of their third party claim against the P. L. Carney Construction Company. We affirm.
P. L. Carney Construction Company was a sub-contractor to Glaser Construction Company, Inc. on its contract to construct transmission power lines in Cameron and Calcasieu Parishes. P. L. Carney Construction Company agreed
". . . to hold and save harmless the owner Jeff Davis Electric Coop., Inc., and Glaser Construction Company Inc. from any and all claims for damages arising from and/or as a result of your operations in connection with the work to be accomplished under the terms of this contract."
Carney Construction was required to obtain certain insurance including workmen's compensation coverage. To comply, Carney obtained a workmen's compensation policy from Employers Mutual Liability Insurance Company of Wisconsin issued to P. L. Carney Construction Company, P. L. Carney, Sole Proprietor, an individual.
The evidence before the court on the motion for summary judgment was limited to Employers' insurance policy and depositions of P. L. Carney and the insurance agent who placed the policy (by the assigned risk route) with Employers. Employers supported its motion for summary judgment by showing that plaintiff P. L. Carney was the insured under the policy issued to "P. L. Carney Construction Company, P. L. Carney Proprietor, an individual". Since the insured was the injured party he was not covered as an employee.
Appellants contend that there were material issues of fact and the summary judgment should therefore be reversed and the case remanded for trial. The depositions established that funds to operate the "company" were furnished by Carney and his wife from their community property and from the wife's separate property. The wife also performed office work for the "company." Carney thought the Employers' compensation policy covered injuries to him just as it covered injuries to his employees. He reasoned that just as his life insurance policies covered his life, his workmen's compensation policy should cover his injuries. Appellants further contend that since Carney's wife put separate funds into the business venture and performed company office work, that the company was insured as a separate entity and Carney was covered as an employee.
We find no issue as to a material fact and affirm the summary judgment dismissing the third party demand against *178 Employers. The Carney Construction Company was not a partnership or corporation. The third party demand and claim that P. L. Carney Construction Company was a partnership with Mr. and Mrs. P. L. Carney as partners, is untenable. Spouses cannot contract with each other to form partnerships. LSA-C.C. Art. 1790; Squire v. Belden, 2 La. 268 (1831); Aldrich v. United States, 256 F.Supp. 508 (E.D.La. 1966), affirmed City Nat. Bank v. United States, 5 Cir., 383 F.2d 341; 2 Planiol, Civil Law Treatise No. 1937 (La.St.L.Inst. transl. 1959).
Since the P. L. Carney Construction Company is a sole proprietorship, plaintiff P. L. Carney could not be his own employee. As employer, he cannot collect compensation benefits from his own compensation insurance carrier. Manuel v. Jennings Lumber Company, 231 So.2d 458, 460 (La. App. 3 Cir. 1970).
Likewise, we find that the trial court properly rejected Glaser's and Liberty Mutual's third party action against P. L. Carney Construction Company under the "hold harmless clause" whereby Carney Construction undertook to protect Glaser. This clause protects Glaser in all situations save the one before us. The "hold harmless clause" contained in the sub-contract does not operate to allow defendants to be indemnified by plaintiff for damages consisting of a judgment on a law suit instituted by plaintiff. Manuel v. Jennings Lumber Company, 231 So.2d 458 (La.App. 3 Cir. 1970). To uphold such a clause would violate public policy since it would preclude redress to plaintiff either in tort or under the workmen's compensation law. LSA-R.S. 23:1033. Haven v. Munson, 169 So. 819 (La.App. 1 Cir. 1936); Gatheright v. United States Fidelity & Guaranty Company, 267 So.2d 576 (La.App. 3 Cir. 1972).
Plaintiff is not an employee of a sub-contractor as is required for indemnification under LSA-R.S. 23:1063; he is the sub-contractor. The company was a sole proprietorship; it was not a partnership and was not a corporation. It had no separate legal identity from that of Carney. In order for third party plaintiffs' suit for indemnity to fit the requirements of LSA-R.S. 23:1063, Carney would have to be considered an employee of himself. However, an individual cannot be his own employee. An employment relationship results from a bilateral contract between two persons. LSA-C.C. Arts. 2669, 2745 et seq., 1765. A person cannot enter into an enforceable contract with himself to furnish services to himself. Cf., Litvinoff and Tete, Louisiana Legal Transactions 1, 144 et seq.
On April 29, 1971 plaintiff and several members of his work crew loaded and hauled a truck load of poles from the job site to Carney's work yard in Alexandria. While unloading these poles from a 3½ foot high trailer, plaintiff stepped or jumped from the top of the load to the ground to avoid being struck by one of the poles which was being moved. Plaintiff immediately complained of pain in his left knee and was assisted to his home.
The following day plaintiff was treated by Dr. Daniel M. Kingsley, orthopedic surgeon of Alexandria, who took a medical history, x-rays, and examined him. Dr. Kingsley diagnosed the injury as internal derangement of the knee with a probable torn meniscus. Surgery was recommended and scheduled, but later cancelled when the problem over insurance coverage developed.
A workmen's compensation claim was filed with Carney's insurer Employers. This was eventually denied because plaintiff was the insured. On August 12, 1971 Carney's attorney made demand on the general contractor Glaser Construction for benefits under the compensation statute. This was in turn forwarded to Glaser's insurer Liberty Mutual which promptly started its investigation. No benefits were paid and on October 15, 1971 suit was filed. The trial court awarded $49 *179 per week for a period not to exceed 500 weeks together with penalties and attorney's fees.
Defendants deny the existence of an employer-employee relationship; that plaintiff sustained an accident in the course and scope of his employment; that the accident caused the injury which Carney is complaining about; that Carney is totally and permanently disabled; that Carney's weekly compensation rate is $49; and that Liberty Mutual was arbitrary in rejecting Carney's demand.
Carney was a "working sub-contractor" as defined by LSA-R.S. 23:1021(6). As such he is entitled to workmen's compensation benefits because he suffered a disabling accident which arose out of the course and scope of Glaser's contract. The evidence demonstrated that the work performed by plaintiff was part of Glaser's business of erecting transmission power lines. LSA-R.S. 23:1021 includes an independent contractor within the ambit of workmen's compensation coverage if a ". . . substantial part of the work time of an independent contractor is spent in manual labor by him in carrying out the terms of the contract. . . ." The term "substantial part" was not intended as a phrase of mathematical precision, but instead indicates the converse of insubstantial or immaterial. Welch v. Newport Industries, 86 So.2d 704 (La.App. 1 Cir. 1956); Vizena v. Travelers Insurance Company, 238 So.2d 238 (La.App. 3 Cir. 1970). The preponderance of evidence shows that Carney spent more than half his work time in manual labor carrying out the terms of the sub-contract with Glaser. Although half is not a sacramental figure as indicated by the rule enunciated in Welch and Vizena, we cannot say that this percentage of work time or even a lesser percentage is insubstantial.
Plaintiff sustained the accident in the course and scope of his employment. Carney was obligated to clean up the construction site which included disposing of poles which were being unloaded at his Alexandria work yard. They proceeded from the work site to the work yard and the accident occurred between 4 and 5 p. m. shortly after their arrival. Carney was engaged in work required by his contract with Glaser and the work required him to be at the place of the accident. Several employees witnessed the accident and corroborated Carney's testimony. There was no evidence to suggest that the accident did not occur. The finding that the accident occurred in the course and scope of Carney's employment is manifestly correct. Kern v. Southport Mill, 174 La. 432, 141 So. 19 (1932).
Because plaintiff was not just returning home when the accident occurred but was involved in the furtherance of his employer's interests, the rule of law cited in Gauthreaux v. Life Insurance Company of Georgia, 256 So.2d 832 (La.App. 3 Cir. 1972), and Welch v. Travelers Insurance Company, 225 So.2d 623 (La.App. 1 Cir. 1969), is inapposite. We nevertheless note that these cases held that the accidents involved in the respective cases occurred within the course and scope of employment.
The accident caused Carney's injury. He performed hard manual labor regularly up to the time of the accident. The following day he was taken to Dr. Kingsley who opined that the 56 cc's of blood which he aspirated from Carney's knee on April 30, 1971, clearly and objectively indicated a fresh injury. Carney used crutches for ten days thereafter and has not been able to climb poles from that day through the date of trial. A workmen's compensation claimant enjoys the presumption that the accident caused the injury where, commencing with the accident, the symptoms appear and continuously manifest themselves thereafter, provided such evidence is consistent with the medical testimony. Bourque v. Monte Christo Drilling Corporation, 221 So.2d 604 (La.App. 3 Cir. 1969).
*180 If the injury to Carney's knee was merely an aggravation of Carney's prior knee injury rather than a completely new injury, such an aggravation of a prior injury would nevertheless be compensable, if disabling. Clement v. Fidelity & Casualty Company of New York, 220 So.2d 575 (La.App. 3 Cir. 1969); Landry v. Liberty Mutual Insurance Company, 236 So.2d 235 (La.App. 3 Cir. 1970).
We find no manifest error in the award of total and permanent disability. Carney cannot return to the same type work he performed before the accident without suffering substantial pain. As a "working sub-contractor" within the intendment of LSA-R.S. 23:1021(6), a substantial amount of Carney's work was manual labor consisting of climbing poles and raising heavy wire. There was a preponderance of evidence to support plaintiff's testimony that he is no longer able to perform these duties.
Dr. Kingsley's testimony, taken as a whole, indicated that his initial diagnosis of cartilage damage was erroneous, but that plaintiff did have ligament injuries. The doctor testified that with ligament injuries, Carney could perform quite a few tasks, but could not perform work involving repetitive heavy lifting, or high climbing. (Dr. Kingsley's deposition p. 34.)
Plaintiff's duties involved repetitive heavy lifting and high climbing. The evidence preponderates that plaintiff could not and did not continue to perform the same type work after the accident as he did before. His job duties on subsequent employments involved much less manual exertion, and fellow employees noted his refusal to perform hard manual labor. Even at jobs which involved a lesser degree of physical strain, Carney occasionally suffered swelling and pain in his left knee.
Plaintiff testified that he has always been willing to have an operation, but an operation has not been tendered.
We find no error in the award of the maximum weekly disability benefits of $49. LSA-R.S. 23:1221(2) provides for the payment of 65% of wages up to a period of 500 weeks subject to a $49 maximum under LSA-R.S. 23:1202. LSA-R.S. 23:1021(11) outlines the procedure to determine the wages of an employee who works on a piecemeal or unit basis as Carney did. Glaser paid Carney Construction every two weeks based on invoices submitted. From this amount Carney drew $5,345 over a period of six months. Applying the formula to determine wages as outlined in LSA-R.S. 23:1021(11), we find that Carney is entitled to the maximum workmen's compensation benefit rate even if we assume a six day work week for the entire period.
While we find the issue close, we fail to find manifest error in the holding that Liberty Mutual was arbitrary and capricious in rejecting Carney's claim. LSA-R.S. 23:1201(2) provides for the assessment of penalties and attorney's fees against an insurer which has not paid a claim within sixty days of receipt of claim if the failure to pay is found to be arbitrary, capricious, and without probable cause. One reason Carney was denied compensation was that Liberty Mutual contended the other insurer owed the claim. This is not a justifiable reason to withhold benefits and force plaintiff to undergo the hardship, delay and legal expense in collecting his claim. Humphreys v. Marquette, 235 La. 355, 103 So.2d 895 (1958).
The numerous defenses were effectively presented and argued, but Carney's injury, disability, and right to compensation were so clearly established that we will not disturb the trial court's award of penalties. Defendants complain that the $2,500 award for attorney's fees should be reduced while Carney answered the appeal seeking an increase to $4,000. We fail to find manifest error in the quantum of the award. Gatte v. Coal Operators Casualty *181 Company, 256 La. 325, 236 So.2d 485 (1970).
The trial court judgment is affirmed at appellants' costs.
Affirmed.
SAVOY, J., dissents from the granting of attorney fees.