280 So.2d 861 (1973)
Leo O. PORTER, Plaintiff-Appellant,
v.
AUGENSTEIN CONSTRUCTION COMPANY, Defendant-Appellee.
No. 4214.
Court of Appeal of Louisiana, Third Circuit.
July 18, 1973.
Rehearing Denied August 15, 1973.
McHale & Bufkin by Louis D. Bufkin, Lake Charles, for plaintiff-appellant.
Stockwell, St. Dizier, Sievert & Viccellio by Fred H. Sievert, Jr., Lake Charles, for defendant-appellee.
*862 Before SAVOY, HOOD and CULPEPPER, JJ.
HOOD, Judge.
This is a workmen's compensation suit instituted by Leo O. Porter against Augenstein Construction Company, Inc. Judgment was rendered by the trial court in favor of defendant, and plaintiff has appealed.
The issue presented is whether plaintiff has been disabled as the result of a work-connected accident since the payment of workmen's compensation benefits was discontinued on February 23, 1972.
Porter slipped and twisted his right hip on June 21, 1971, while he was working as a pipefitter-plumber for defendant, Augenstein Construction Company. He reported the accident to his foreman, who immediately took him to defendant's first aid station where heat therapy, by means of a heat lamp, was applied to the injured hip. Plaintiff continued to work full time for the week which ended June 27. He worked 16 hours the following week, and he did not work at all during the week which ended July 11. He then returned to work and worked fairly regularly until August 29, 1971, when he voluntarily terminated his employment.
The medical evidence consists primarily of the testimony of five physicians who examined or treated plaintiff.
Dr. William G. Akins, an orthopaedic surgeon, examined plaintiff on July 16, 1971, and found that he was suffering a significant degree of pain in the area of the right hip. He prescribed some anti-in-flammatory and pain killing medications, one of which contained codeine, and he injected a local anesthetic and a compound containing cortisone. He reviewed x-rays of plaintiff's hip which had been taken a few days prior thereto, and he found them to be within normal limits. He did not diagnose the cause of Porter's complaints on that first visit, but he scheduled a follow up visit for that purpose, and plaintiff failed to keep the appointment. The doctor thus made no determination of the nature and extent of Porter's injuries, although he stated that since he found the x-rays to be within normal limits he felt on the one occasion that he examined plaintiff that his symptoms would be short lived.
Plaintiff returned to Dr. Atkins on July 26, 1971, complaining of dizziness and a fainting spell. The doctor made no examination of plaintiff at that time, except to determine that he had high blood pressure, and he simply referred him to Dr. Thomas Hugh DeLaureal, an internist.
Dr. DeLaureal examined plaintiff on July 26 and on August 2, but he restricted that examination to his blood pressure and to his complaints of dizziness and fainting. He made no attempt to determine the nature of plaintiff's hip injury.
Porter consulted Dr. Boyd M. Woodard, a general practitioner, on September 13, 1971, who found some tenderness and muscle spasm in the area of the right hip. He treated plaintiff by administering physical thereapy and injections of cortisone, and he discharged him on October 6, 1971, as being able to resume the regular duties of his employment. In his formal report to the employer, the doctor diagnosed plaintiff's injury as "Muscle Spasm, possible bursitis right hip." Plaintiff returned to Dr. Woodard about two weeks later still complaining of pain in his hip, and the doctor thereupon re-opened the case and resumed treating him. The treatment consisted of the administration of anti-inflammatory drugs, heat therapy and the injection of a cortisone preparation locally into the affected area. During the course of that treatment he referred plaintiff to an orthopaedic surgeon for examination. He discharged Porter on February 23, 1972, with a certificate that he was able to "assume his regular duties."
Dr. Woodard testified that he believes now that his earlier diagnosis of bursitis in *863 the hip was incorrect, but that he does not know what has caused plaintiff's symptoms. He stated, "To be perfectly fair, I certainly don't know for sure what he had." He feels that plaintiff has the pain of which he complains, but he testified that he discharged him on February 23, 1972, because he could not "palpate pain" at that time, and he felt that plaintiff "was as able to go back to work as he could be at that time."
Defendant paid all of the workmen's compensation benefits due plaintiff from the date of the injury until February 23, 1972. The payments were discontinued on the last mentioned date in view of Dr. Woodard's report that plaintiff was able to return to his regular duties.
Dr. Edward W. Phillips, Jr., an orthopaedic surgeon, examined plaintiff on December 14, 1971, at the request of Dr. Woodard. He found that plaintiff had poor circulation in his lower extremities, and that the x-rays which had been taken on July 8, 1971, shortly after the accident occurred, showed some "aseptic necrosis" of the head of the right femur. Other x-rays which Dr. Phillips took on the day he examined plaintiff showed the same condition, and revealed that it had not changed over that four or five month period. Porter was examined again by Dr. Phillips on November 17, 1972, with substantially the same findings. The doctor concluded that plaintiff was suffering pain in his right hip, and that the aseptic necrosis caused that pain. He felt, however, that that condition existed before the accident occurred on June 21, 1971, and that plaintiff "probably could go back to doing whatever work he was doing before he was hurt." He conceded that the condition of plaintiff's hip is one which normally is associated with painful symptoms, and he stated that it was possible for the condition to have been dormant and unnoticed before June 21, 1971, and then aggravated by the spraining injury which occurred on that date.
Porter was examined by Dr. George P. Schneider, an orthopaedic surgeon, on April 13, 1972, and again briefly on the date of the trial, November 28, 1972. His x-ray examination revealed a slight early flattening of the head of the right hip bone and an area of decreased calcification in the head of the femur, all of which indicated that some type of degenerative process was taking place in the hip joint. On the basis of his findings and the history he received, he concluded that the traumatic episode which plaintiff experienced on June 21, 1971, "would have been sufficient to precipitate this type of process." He feels that plaintiff cannot perform any work which requires climbing, weight bearing, straining or work of a manual type. He testified with reference to plaintiff's disability, "I can't relate it to anything else but the injury," and "I can't indicate anything other than trauma as being the etiology in view of the history involved, and again I'm assuming that to be correct."
Plaintiff was 60 years of age when the accident occurred. He had worked as a pipefitter, plumber and instrument man for 25 years prior to the date of the accident, and his work required him to do a great deal of standing, walking, lifting and climbing. He testified that he had no disability of any kind and had experienced no pain in his hip prior to June 21, 1971, but that he has suffered pain in his right hip every day since that time. He stated that because of this pain he can stand on his feet no longer than 10 or 15 minutes at a time, that he cannot walk more than two or three hundred yards without stopping to relieve the pain, and that he has had to discontinue fishing and engaging in other similar recreational activities which require standing or walking.
The evidence shows that plaintiff was never involved in an accident causing him to be hospitalized before June 21, 1971, that he never claimed or received workmen's compensation benefits before that *864 date, and that he never missed any work because of an injury during the 25 years he worked as a steamfitter and pipefitter. He did not limp before the accident, and he has limped continuously since that time. He has not been employed and he has performed no manual labor since he terminated his employment by defendant.
The evidence in the instant suit convinces us that plaintiff had a degenerative condition of his right hip which existed on June 21, 1971, but that it was dormant or asymptomatic up to that time. Porter thus was not disabled prior to that date. We find that the twisting or straining injury which he sustained on June 21, 1971, aggravated his pre-existing hip condition, causing it to become symptomatic, and that he has been disabled continuously since that time.
The law is settled that an employer accepts an employee as he finds him, and that ordinarily the Workmen's Compensation Act affords coverage if a work-connected accident precipitates or accelerates a pre-existing disposition or disease into becoming a present disability. DeVille v. Travelers Ins. Co., 176 So.2d 824 (La.App. 3 Cir. 1965); Johnson v. Employers Mutual Liability Ins. Co. of Wis., 250 So.2d 38 (La.App. 3 Cir. 1971); Lum v. Employers Mutual Liability Co. of Wis., 216 So.2d 889 (La.App. 2 Cir. 1968).
A claimant's disability is presumed to have resulted from an accident, if before the accident the injured person was in good health, but commencing with the accident the symptoms of the disabling condition appear and continuously manifest themselves afterward, provided that the medical evidence shows that there is a reasonable possibility of causal connection between the accident and the disability. Bourque v. Monte Christo Drilling Corporation, 221 So.2d 604 (La.App. 3 Cir. 1969); Cripps v. Urania Lumber Co., 213 So.2d 353 (La.App. 3 Cir. 1968); Carney v. Liberty Mutual Ins. Co., 277 So.2d 175 (La. App. 3 Cir. 1973).
A presumption that plaintiff's disability resulted from the accident exists in the present suit. The evidence shows more than a reasonable possibility of causal connection between the accident and his present disability. We think it establishes such a connection by a preponderance of the evidence. Even if it should fall short of proving that connection, however, the evidence is sufficient to support the legal presumption that Porter's present disability resulted from the accident.
We have considered the rule, pointed out by defendants, that the testimony of the treating physician, in this case Dr. Woodard, ordinarily should be accorded more weight than that of a physician who has made an examination for purposes of diagnosis only. See White v. Insurance Company of North America, 150 So.2d 908 (La.App. 4 Cir. 1963). Another applicable rule, however, is that the testimony of a specialist in a particular field of medicine ordinarily is entitled to more weight than that of a general practitioner. Meche v. Maryland Casualty Company, 204 So. 2d 719 (La.App. 3 Cir. 1967). In the instant suit the treating physician, Dr. Woodard, is a general practitioner, while the examining physicians, Doctors Akins, Phillips and Schneider, are specialists in the field of orthopaedics.
We do not have to resolve the apparent conflict in the two above mentioned rules, because we find no significant conflict in the testimony of the physicians who testified. Dr. Woodard and Dr. Akins made no determination of the cause of plaintiff's symptoms, but both found that he was or is suffering pain in his hip. We have concluded that the pain is substantial and disabling. Dr. Phillips and Dr. Schneider also determined that plaintiff is suffering pain in his right hip, and they found objective signs to account for that pain. Dr. Phillips agreed that the injury which plaintiff sustained could have aggravated his pre-existing condition and made it symptomatic, *865 but he apparently felt that the accident had not done so, and that the pain which plaintiff suffers is not disabling. Dr. Schneider was of the opinion that the accident had aggravated the existing hip condition, causing it to become painful, and that plaintiff's pain is disabling.
Our conclusion is that the accident aggravated the pre-existing condition of plaintiff's right hip, causing it to become symptomatic, that the pain which plaintiff suffers is substantial, and that he has been totally and permanently disabled, within the meaning of the Workmen's Compensation Act, since the date of the accident. In our opinion the trial judge erred in rejecting plaintiff's demands.
The evidence shows that all medical expenses incurred by plaintiff in treating his injury have been paid. We find that defendant has not been arbitrary or capricious in its refusal to pay compensation benefits, and that there thus is no merit to plaintiff's demand for penalties and attorney's fees.
For the reasons assigned, that part of the judgment appealed from which rejects plaintiff's demands for compensation benefits is reversed, and judgment is hereby rendered in favor of plaintiff, Leo O. Porter, and against defendant, Augenstein Construction Company, Inc., condemning defendant to pay to plaintiff the sum of $49.00 per week, beginning June 21, 1971, and continuing during plaintiff's period of disability not to exceed 500 weeks, with interest at the legal rate on each past due payment from its due date until paid, and all costs of this suit, subject to a credit for all compensation benefits heretofore paid to plaintiff. The remaining parts of the judgment appealed from, and particularly that part which fixes all expert witness fees, is affirmed. The costs of this appeal are assessed to defendant-appellee.
Affirmed in part, reversed in part and rendered.