WILLIAMS, Judge.
Wilbur E. Seaman filed this suit against Procon, Inc. and The Fidelity & Casualty Company, its workmen’s compensation insurer, endeavoring to recover for total and permanent disability. Seaman alleges his disability resulted from back injuries re *900 ceived in a job-related accident on July 16, 1969. Defendants answered denying plaintiff sustained any injury during the course of his employment. From a judgment in favor of defendants, plaintiff appealed.
The record reveals Seaman was employed from July 8, 1969 to July 20, 1969 by Procon, Inc., as a structural iron worker. His employment was terminated July 20 because the job was completed. As a journeyman iron worker, Seaman was assigned through the local unidn office to jobs needing his skills. He described the alleged accident as follows:
"We had a winch truck and we went to the warehouse to get a roll of wire mesh and on the way back it broke loose and got me on the foot as it fell and the other fellow that I was working with as well, and it also hit me in the side. And at the time I didn’t realize it had injured me. A few minutes later I thought I was having a heart attack, I went to my knees. A fellow I was working with grabbed me and of course after that he took me to Mr. Black, the superintendent with UOP that we were working under and made a report on it. Thereafter I went to the doctor.”
The accident was reported to Seaman’s superintendent. As a result .of the accident Seaman alleges he suffered injuries to his lower back which rendered him totally and permanently disabled within the meaning of the Louisiana Workmen’s Compensation Act.
Seaman was seen on the day of the accident by Dr. Robert D. Hightower, orthopedic surgeon. Seaman’s only ^complaint was pain in his upper back on the right side. The first time he indicated his lower back troubled him was on a visit to Dr. High-tower on July 23, 1969. The doctor made a thorough examination, including X-rays of Seaman’s back, and determined he had a “development defect” in his back known as spondylolysis at the 1^5 level. Seaman had previously been examined and treated in Dr. Hightower’s office by an associate, Dr. D. F. Overdyke, in May, 1968. Dr. High-tower was able to compare X-rays made in 1968 to those made in July, 1969 and those later made in 1970. The doctor stated there was no change in Seaman’s back structure. Seaman was examined by three other orthopedic surgeons: Dr. Overdyke examined and treated him from March to August, 1968, and again after July 16, 1969. Dr. Ray King examined him only on September 11, 1970. Dr. Bennett F. Young first examined Seaman on May 5, 1972.
Dr. Overdyke was the treating physician for Seaman following a March, 1968 injury and X-rays of Seaman’s low back area were taken. The doctor’s records revealed Seaman was involved in an automobile accident on April 15, 1968 and received an injury in the area of his low back. Dr. Overdyke continued to treat Seaman until August 2, 1968 at which time Seaman was discharged. Dr. Overdyke was of the opinion then that Seaman had a mechanically unstable back as a result of a development defect classified as a pre-spondylol-isthesis. In Dr. Overdyke’s statement Seaman had a ten percent permanent disability as a result thereof.
Dr. Overdyke examined Seaman in July, 1969, and on January 31, 1970, and finally on November 6, 1970. His diagnosis of Seaman’s low back condition remained the same. At the time of Dr. Overdyke’s deposition, he was presented for examination X-rays taken of Seaman’s back area in 1968, 1969, 1970 and 1972. It was his opinion none of these X-rays revealed any fracture in Seaman’s back but only the development defect found in the 1968 examination.
Dr. Ray King, an orthopedic surgeon, examined Seaman on September 11, 1970 at which time he had X-rays of Seaman’s back, and in his deposition he stated he found a congenital defect of the lumbo-sacral joint he called a spondylolisthesis. Dr. King was requested to examine the X-rays taken in 1968 and 1969 by Drs. Overdyke *901 and Hightower and X-rays taken in 1972 by Dr. Young. Dr. King was of the opinion none of these pictures revealed any fractures in Seaman’s back but did reveal the congenital defect described.
Dr. Bennett F. Young, an orthopedic surgeon, testified he first saw Seaman May 5, 1972, the history given him by Seaman recorded in Dr. Young’s records is as follows:
“He was originally seen by me on the 5th day of May for an orthopedic evaluation. He stated he had sustained an accident in July. He didn’t remember the date. In July of 1969. The accident occurred when a roll of wire mesh weighing sixty to seventy pounds rolled off the truck while he was at work, and he bent over to pick it up and he experienced a sudden, acute pain in his back and was unable to straighten up for a while. And he was seen by several doctors and at one time was hospitalized at Doctors Hospital and then at Schumpert and treated conservatively. And because of pain he said he had been unable to return to work and continued to have difficulty.”
Dr. Young testified from his reading and interpretation of the various X-rays that in his opinion Seaman had suffered a “traumatic spondylolysis” and there was a bone fracture at this site. Dr. Young was of the opinion the fracture was the result of the July 16, 1969 accident. Seaman underwent a myelogram in May, 1972, and Dr. Young’s opinion was this test revealed herniated discs at the L-3-4 and 1^5-S-l levels. On May 19, 1972 Dr. Young operated on Seaman’s back for this condition, stating his examination during the operation confirmed his diagnosis of the fracture and herniated discs. He further stated his examination of the X-rays made by Dr. Hightower revealed evidence of the fracture he found in Seaman’s back.
Seaman was 35 years of age on the date of the alleged accident. He was a journeyman iron worker, which job requires pulling, pushing and lifting of metal items and is classified as heavy work. Seaman testified he did not know at the moment of the incident of July 16, 1969 he had injured himself in the lower back. He continued working at Procon, Inc. until July 20, 1969. He reported back to Dr. High-tower on July 23, 1969 at which time he stated to the doctor his low back was hurting him. Dr. Hightower was asked to comment on this delay by Seaman as follows :
“Q Doctor, the history of pulling on a wire mesh on 7-16-69 and the conditions that you found on 7-23-69, again the complaints that he had and the history that he gave you and what your examination revealed in the low back on 7-23-69, is the history that he gave you compatible with the condition that you found in -the low back ?
“A Yes, sir, it is compatible with it in that on many occasions a back can be injured and maybe not show muscle spasm and that sort of thing for maybe a week or ten days or so. So that makes this compatible with it, yes, sir.”
In answer to interrogatories on periods of employment after July 16, 1969 Seaman gave a history of short periods of work thereafter and in most instances he was terminated because of his back pain.
The record reflects a stipulation that workmen’s compensation payments were made by defendant insurer to Seaman during a periods of 33 weeks beginning January 30, 1970^and extending through September 18, 1970. Seaman continued in his efforts to follow his work as iron worker until some date after filing this suit on September 28, 1970. He testified his back condition deteriorated ultimately forcing him to quit his work. Since the back operation in 1972 he has not been employed. There is no question raised as to his present total and permanent disability.
*902 The sole question for resolution is whether Seaman sustained the burden of proving by a preponderance of the evidence the accident on July 16, 1969 caused his injury. The evidence shows he suffered a back injury in 1968. He was discharged and resumed work until the July 16, 1969 incident. All of the doctors found Seaman had an unstable back due to the defect described as spondylolysis. The difference between the doctors as to their interpretation of the various X-rays does not have to be reconciled because a fracture, if it existed, was not the real cause of Seaman’s disability. This cause was determined by the myelogram test given him by Dr. Young at which time there was revealed herniated discs at the I^3-L-4 and I^5-S-l of Seaman’s and confirmed by the subsequent operation.
The evidence in this case convinces us Seaman had a defective condition • in his back on July 16, 1969. Whether this condition was a development defect or traumatic spondylolysis, the weakness existed but was not disabling prior to that date. We find the incident of the wire mesh striking Seaman either produced the back injury or aggravated his preexisting back condition, causing it to become symptomatic, and at such times he was able to work, his work was carried out in spite of his back injury. The injury finally resulted in the operation performed by Dr. Young and Seaman’s permanent and total disability.
The law applicable to the facts developed here clearly set out in Porter v. Augenstein Construction Company, 280 So.2d 861 (La.App. 3d Cir. 1973) from which we quote:
“The law is settled that an employer accepts an employee as he finds him, and that ordinarily the Workmen’s Compensation Act affords coverage if a work-connected accident precipitates or accelerates a preexisting disposition or disease into becoming a present disability. DeVille v. Travelers Ins. Co., 176 So.2d 824 (La.App. 3 Cir. 1965); Johnson v. Employers Mutual Liability Ins. Co. of Wis., 250 So.2d 38 (La.App. 3 Cir. 1971); Lum v. Employers Mutual Liability Co. of Wis., 216 So.2d 889 (La.App. 2 Cir. 1968).
“A claimant’s disability is presumed to have resulted from an accident, if before the accident the injured person was in good health, but commencing with the accident the symptoms of the disabling condition appear and continuously manifest themselves afterward, provided that the medical evidence shows that there is a reasonable possibility of causal connection between the accident and the disability. Bourque v. Monte Christo Drilling Corporation, 221 So.2d 604 (La.App. 3 Cir. 1969); Cripps v. Urania Lumber Co., 213 So.2d 353 (La.App. 3 Cir. 1968); Carney v. Liberty Mutual Ins. Co., 277 So.2d 175 (La.App. 3 Cir. 1973).’’ [280 So.2d 861, 864]
The evidence convinces us Seaman established his disability resulted from the date of the July accident by, a preponderance of the evidence. We deem important as evidence sustaining the claims of Seaman, his representation of his back injury to Dr. Hightower, within a time considered by the doctor as compatible with the date of injury. The continuous symptoms of back trouble beginning immediately following the accident adds strength to the presumption the injury resulted from such accident. And finally, the positive testimony of Dr. Young as to his findings after tests and the operation on Seaman’s back.
It is our conclusion the accident either produced or aggravated the preexisting condition of Seaman’s ba,ck causing him to be totally and permanently disabled within the meaning of the Workmen’s Compensation Act, since the date of the accident. The trial court erred in rejecting Seaman’s demands.
For the reasons assigned, the judgment of the trial court rejecting Seaman’s demands for workmen’s compensation benefits is reversed and judgment is hereby
*903 rendered in favor of Wilbur E. Seaman, against defendants, Fidelity & Casualty Company of New York and Procon, Inc., in solido, condemning defendants to pay Wilbur E. Seaman $45 per week, beginning July 16, 1969 and continuing during plaintiff’s period of disability not to exceed 500 weeks, with legal interest thereon on each past due payment from its due date until paid, and for all medical expenses not to exceed $12,500 resulting from plaintiff’s injury, subject to a credit of all workmen’s compensation benefits paid to plaintiff and medical expenses heretofore paid plaintiff or on his behalf.
The costs of this suit and appeal are assessed against defendants-appellees.
Reversed and rendered.