MILLER, Judge.
Defendant Calcasieu Paper Company, Inc., appeals the trial court award of total and permanent disability workmen’s compensation benefits to plaintiff Denny C. Kennedy. We affirm.
It is admitted that Kennedy suffered a job related accident and that he is totally and permanently disabled. The sole issue is whether the disability stems from the accident or his pre-existing arthritic condition.
The accident occurred on December 21, 1969 when Kennedy stepped through a grating injuring his right knee. He was seen the same day by Dr. A. B. Osborn, a general practitioner and the company doctor. He was treated with icepacks, pressure dressings and pain relievers. Kennedy continued under Dr. Osborn’s care for three months and received compensation during this time. At the end of three months, Dr. Osborn recommended that Kennedy be taken off compensation. Upon learning of Kennedy’s continuing complaints, Dr. Osborn sent him to see Dr. Edmund C. Campbell, an orthopedic surgeon of Lake Charles. Kennedy was examined and x-rayed by Dr. Campbell on May 7, 1970. Sometime later, Kennedy consulted an attorney and was sent to see Dr. Norman P. Morin, an orthopedic surgeon of Lake Charles. Dr. Morin examined and x-rayed Kennedy on January 20, 1971 and did not see him again.
The record shows that for at least two years prior to the December 21, 1969 injury, Kennedy had been employed almost constantly by different companies as an ironworker earning approximately $250 per week. Kennedy had an excellent work record and seldom if ever missed work. He never complained or exhibited evidence of pain in his right knee and his job required climbing or squatting approximately 80% of the time. Since the accident, he has not been able to work.
All three physicians x-rayed Kennedy’s knee and determined that a condition of degenerative arthritis existed in his right knee and that such condition pre-existed the accident. Dr. Morin testified on deposition that this condition could have been dormant prior to the accident, i. e. asymptomatic and been activated or made symptomatic by the accident. He stated that if a dormant condition was activated by trauma the resultant pain relating to the trauma could be permanent. Tr. 29, 34, 39. Whereas if the condition was symptomatic prior to trauma, pain relating to trauma would subside and be replaced by the original pain relating solely to the arthritic condition. His exact words at Tr. 39 were:
“. . . some conditions remain dormant. They are few but they are there. We do get them. And all of a sudden become active so to speak, and from then on so help me it’s difficult for us to quiet them down. And in such cases when they’ve remained dormant, meaning asymptomatic, then the prognosis is much different than those that had been active before and are injured. They seem to have ups and downs. These others don’t. I don’t know why but this is the rule.”
All physicians agree that the whole question hinges on whether or not Kennedy was truly asymptomatic prior to the December 1969 accident.
Dr. Campbell admitted that it was possible that Kennedy had no pain prior to the accident (Tr. 56, 57); that a medically dormant condition can be made active by trauma and the symptoms continue indefinitely as a result of the activation caused by trauma. Tr. 61, 62. Dr. Osborn agreed with both propositions (Tr. 84, 85) and stated that he had seen persons with *802 arthritic conditions worse than Kennedy’s who had never had pain and did not know the condition existed.
The record amply supports the trial judge’s determination that Kennedy had experienced no pain prior to the accident; that the arthritic condition was dormant; and that the December 1969 trauma activated the condition. There is no manifest error in the determination that Kennedy’s disability is related to the accident rather than to pre-existing arthritis.
This court considered the activation of a dormant or asymptomatic rheumatoid condition in Clement v. Fidelity & Casualty Co. of New York, 220 So.2d 575 (La.App. 3 Cir. 1969). In making an award based on total and permanent disability, we stated:
“The principle is well established in the jurisprudence of this state that the employer takes the employee as he finds him. The worker who is normally susceptible to disability from an accident is entitled to the full protection of the compensation statute, even though the same accident would cause little or no harm to a healthy worker. Nor is it important that the diseased or weakened condition might alone have eventually produced the disability. An employee’s disability is fully compensable when precipitated by an industrial accident, even though caused, also, by a contributing, pre-existing, dormant physical condition, or pre-disposition. Parish v. Fidelity & Casualty Company of New York, 124 So.2d 234 (La.App. 2d Cir. 1960), cert. denied, and citations therein.”
See also Johnson v. Employers Mutual Liability Ins. Co. of Wis., 250 So.2d 38 (La.App. 3 Cir. 1971).
Recently in Williams v. Hudson East, La., 261 So.2d 629 (1972), our Supreme Court awarded compensation based on total and permanent disability to a man whose “. . . injury activated a previously asymptomatic arthritic condition in the neck.”
The trial court judgment is affirmed. Costs of this appeal are assessed to defendant appellant.
Affirmed.