276 So.2d 889 (1973)
John P. CRYER
v.
GULF INSURANCE COMPANY.
No. 9292.
Court of Appeal of Louisiana, First Circuit.
April 9, 1973.
*890 E. Drew McKinnis, McGehee & McKinnis, Baton Rouge, for appellant.
Kenneth E. Barnette, Seale, Smith & Phelps, Baton Rouge, for appellee.
Before SARTAIN, BLANCHE and WATSON, JJ.
WATSON, Judge ad hoc.
This is an appeal by plaintiff, John P. Cryer, from a judgment of the trial court awarding him a certain sum as the value of a bulldozer damaged by fire and insured for fire loss by Gulf Insurance Company, defendant. Plaintiff complains on appeal that the award is inadequate and that he should have been granted penalties and attorney's fees.
On April 9, 1971 plaintiff's Allis Chalmers bulldozer, known as an HD-21A, was burned by a fire of unknown origin. The bulldozer had been obtained by plaintiff in exchange for clearing work performed on a large tract of land, and since the acquisition, the bulldozer had been repaired and improved by plaintiff's employees with parts obtained from the Allis Chalmers dealer in Baton Rouge, the Furlow-Laughlin Company.
The plaintiff had insured his bulldozer against fire loss and other perils through a policy of insurance issued by Gulf Insurance Company for a face amount of $25,000, after consulting with the personnel at Furlow-Laughlin concerning the amount of insurance he should carry. The HD-21A, *891 reflected by the record to be an extremely large bulldozer, was acquired by plaintiff in July, 1969 or some 22 months prior to the fire. There is no dispute that the bulldozer was in good operating condition at the time of the fire and that plaintiff had paid $7,611.75 to Furlow-Laughlin in connection with reconditioning the piece of equipment.
Immediately after the fire, plaintiff notified the defendant of his loss, although no formal proof of loss was ever filed. He obtained an estimate of repairs from Furlow-Laughlin, to whose premises the machine had been moved for inspection and partial disassembly. The Furlow-Laughlin repair estimate was $17,459.21. The burned bulldozer was also inspected by representatives of the defendant including the witnesses Wroten and Doyle. (Doyle was engaged by the defendant to investigate the loss; he appeared as an expert witness although his qualifications in heavy machinery as revealed by extensive cross-examination are not impressive.) Doyle proceeded to obtain a repair estimate from Gerald Mayeaux, the owner and operator of a tractor repair business in Baton Rouge. This estimate was in the amount of $12,500. This was the result of apparently making a closer inspection and learning of the dispute between the parties. Whether this increase in the Mayeaux estimate was conveyed to Doyle is not clear from the record.
The claim continued to be unresolved and plaintiff employed an attorney to represent him. A conference was held among the representatives of the insurance company, plaintiff and his attorney, and the personnel of Furlow-Laughlin on May 29, 1971. Plaintiff's attorney directed letters to the defendant on May 31, 1971 and June 16, 1971 making formal demand for payment of the claim, although never actually specifying the amount demanded.
A petition was filed on June 21, 1971 in which the plaintiff claimed the amount of $25,000 for his loss plus statutory penalties and attorney fees. The defendant deposited a check payable to plaintiff in the amount of $12,500 with the Clerk of Court on July 23, 1971 without prejudice to plaintiff's rights to claim additional damages.
After trial on the merits, the trial court concluded that an award in the amount of $17,459.21 less the $12,500 previously paid to plaintiff was appropriate. In making this award the trial court apparently accepted the Furlow-Laughlin evaluation of the bulldozer at $25,000 but stated that, since the repair estimate was less than its total value, the proper measure of damages was the cost of repairs.
Appellant complains of the decision on the grounds that (1) the trial court did not award the policy limits of $25,000 less the salvage value and (2) the trial court did not grant penalties and attorney's fees.
On the question of the amount of the loss, one conclusion stands out from the record and that is that the value of a used bulldozer is the subject of much disagreement.
We believe that the trial court erred in determining the amount of the loss. The trial court correctly stated the principle of law that if an object can be repaired for less than its value the measure of the award is the cost of repairs, but erred in concluding that this particular bulldozer could be repaired. Virtually all of the witnesses who testified agreed that the bulldozer was a total loss; that it would be uneconomic to repair it; and that, if repaired on the basis of the repair estimates, the witnesses would be unwilling to guarantee the machinery following the repairs. Therefore, we find that the trial court erred in concluding that the bulldozer could be repaired for the sum of $17,459.26. The correct measure of the loss where the object cannot be economically repaired is the difference between the value on the date of the accident and the salvage value. Bennett v. Achord, 238 So.2d 764 (La.App. 1 Cir. 1970); Greenberg v. New Orleans Public Service, 74 So.2d 771 (La.App.Or.1954).
*892 It is noteworthy that almost all of the witnesses testifying concerning the damages to the bulldozer feared hidden damages as a result of the intensity of the heat. We are particularly impressed with the point made in the record that the frame of the bulldozer may well have been weakened by the fire. Therefore, we find that the preponderance of the evidence heard by the trial court is to the effect that the bulldozer is a total loss.
Next, it becomes necessary to establish the value of the bulldozer on the date of the fire. Without detailing the testimony of each witness our study of the record convinces us that the witnesses, Farmer and Kemp, shop foreman and salesman, respectively, for Furlow-Laughlin, placed a value of $25,000 on the bulldozer. The witness McIntyre, a dealer in used construction equipment, estimated a value of $15,000 or $16,000. The witness Mayeaux, gave a repair estimate of $15,000 and a salvage of $1,000 which leads us to believe that he valued the machinery in good working order at approximately $16,000. The witness Doiron, manager of the service department of General Equipment, Inc., (whose testimony was received by way of stipulation) gave a repair estimate of $19,875 performed on a no warranty basis.
An additional repair estimate by B. J. Buzbee, president of Louisiana Weld and Press, Inc., was offered but was admitted for the limited purpose of showing submission of estimates to the insurance company. It will not be considered on the issue of repairs and value.
From the testimony in the record it is evident that there is a large variation in the price of used construction equipment stemming from such factors as the size of the equipment, the condition which it is in at the time of the sale, the ability of the purchaser to make repairs, the size and reputation of the company selling the equipment, the extent of guarantee to be received by the purchaser and other variables.
We, like the trial court, are most impressed with the value estimates by the witnesses, Farmer and Odom, whose qualifications and experience appear to exceed those of the other witnesses.
Therefore, we are of the opinion that the value placed on the bulldozer by the Furlow-Laughlin personnel should be accepted. We conclude that the bulldozer, at the time of the fire, had a value of $25,000. The evidence, principally the testimony of Farmer and Mayeaux, establishes the salvage value at $1,000.
Plaintiff is entitled to recover the sum of $24,000 from defendant, plus interest from date of judicial demand, until paid, and less credit for any sums previously paid. The defendant, of course, would be entitled to credit for the sum of $12,500, which was deposited with the Clerk of Court and received by plaintiff.
The plaintiff also urges strenuously that he is entitled to penalties and attorney fees under the provisions of LSA-R.S. 22:658. However, whether the insurer is arbitrary, capricious and acting without probable cause in failing or refusing to pay under an insurance policy is a question of fact. Nichols v. Iowa Mutual Insurance Company, 232 La. 856, 95 So.2d 338 (1957). LSA-R.S. 22:658[1] is a penalty *893 statute and, therefore, is to be strictly construed. We cannot say that the trial court erred in declining to award penalties and attorney's fees. Two factors particularly impress us as they did the trial court: (1) while plaintiff had considerable communication with the insurer he never made any precise monetary demand and he never filed a formal proof of loss, and (2) the insurance company made a substantial tender, i. e., $12,500, immediately after suit was filed and less than sixty days from the conference of May 29, 1971 and the posting of the attorney's first letter on May 31, 1971. While a written and formal proof of loss may not be sacramental (Wilkins v. Allstate Insurance Company, 173 So.2d 199 La.App. 1 Cir. 1965; Moore v. St. Paul Fire and Marine Insurance Co., 193 So.2d 882 La.App. 3 Cir. 1967), there can be no doubt as to the claim or the initiation of the statutory delays when a proof of loss form is filed and demand is made. Sbisa v. American Equitable Assur. Co., 202 La. 196, 11 So.2d 527 (1942). Cf. New v. Union Automobile Ins. Co., 141 So. 416 (La.App. 2 Cir. 1932). We are convinced that there was a real and genuine dispute as to the value of the bulldozer and as to the question of whether it could be repaired.
It is ordered, adjudged and decreed that there be judgment in favor of plaintiff, John P. Cryer, and against defendant, Gulf Insurance Company, in the sum of $24,000, less a credit of $12,500, plus interest from date of judicial demand until paid. Costs of all proceedings, including appeal, are taxed against the defendant.
Amended and affirmed.
NOTES
[1] § 658. Payment of claims, policies other than life and health and accident; penalties

All insurers issuing any type of contract other than those specified in R.S. 22:656 and 22:657 shall pay the amount of any claim due any insured including any employee under Chapter 10 of Title 23 of the Revised Statutes of 1950 within sixty days after receipt of satisfactory proofs of loss from the insured, employee or any party in interest. Failure to make such payment within sixty days after receipt of such proofs and demand therefor, when such failure is found to be arbitrary, capricious, or without probable cause, shall subject the insurer to a penalty, in addition to the amount of the loss, of 12% damages on the total amount of the loss, payable to the insured, or to any of said employees, together with all reasonable attorney's fees for the prosecution and collection of such loss, or in the event a partial payment or tender has been made, 12% of the difference between the amount paid or tendered and the amount found to be due and all reasonable attorney's fees for the prosecution and collection of such amount. Provided, that all losses on policies covering automobiles, trucks, motor propelled vehicles and other property against fire and theft, the amount of the penalty in each of the above cases shall be 25% and all reasonable attorney's fees. Amended and reenacted Acts 1958, No. 125.