316 So.2d 22 (1975)
Charlie ROBERSON, Plaintiff-Appellee,
v.
LIBERTY MUTUAL INSURANCE CO., Defendant-Appellant.
No. 5037.
Court of Appeal of Louisiana, Third Circuit.
July 3, 1975.
Rehearing Denied July 24, 1975.
Writ Granted October 10, 1975.
*23 Bolen & Halcomb by James A. Bolen, Jr., Alexandria, for defendant-appellant.
G. F. Thomas, Jr., and Edwin Dunahoe, Natchitoches, for plaintiff-appellee.
Before FRUGE, MILLER and DOMEGEAUX, JJ.
DOMENGEAUX, Judge.
This is a workmen's compensation suit by the plaintiff for total and permanent disability benefits allegedly due as a result of a work related accident occurring on January 16, 1974. The plaintiff also sought past and future medical expenses, travel expenses, and penalties and attorney's fees. From a judgment in favor of the plaintiff against the defendantLiberty Mutual Insurance Co. (the workmen's compensation insurer for plaintiff's employer), the defendant insurer has appealed.
On the aforementioned date the 61-year old plaintiffCharlie Roberson, was employed by the City of Natchitoches, Natchitoches Parish, Louisiana, as a mechanic's helper at a local power plant. The city had been plaintiff's employer for some sixteen years. On said date, while helping to repair an engine, the plaintiff was in the process of carrying a large sheet of plywood up a flight of winding stairs to the second floor of a building when he sustained a severe "jerk" in his lower back, causing him to fall to the floor in pain.
The following day the plaintiff went to his family physician, Dr. Charles E. Cook, a general practitioner, who concluded upon examination that the plaintiff had sustained an acute lumbar sprain. On a third visit, some eight days later, however, the doctor found the presence of left sciatic neuritis and thereupon came to the conclusion that plaintiff's problems were due to an extruded disc causing nerve root pressure.
Accordingly, Roberson was referred to a Shreveport neuro-surgeon, Dr. Richard Ashby, who examined plaintiff on January 28, 1974. Following a clinical examination the physician opined that plaintiff probably had nerve compression from a ruptured disc. As a result he recommended a myelogram which was performed on February 4, 1974. According to Doctor Ashby, the myelogram confirmed evidence of nerve root irritation but changed his opinion as to the cause. The doctor, although not completely ruling out the possibility of a disc rupture, opined essentially (after viewing a number of x-rays in addition to the myelogram) that bony spurs, or a pre-existing arthritic condition probably caused the disability from which plaintiff was suffering.
A radiologist, Dr. B. O. Bryan, who was also present when the myelogram was performed, gave a report indicating he felt *24 that plaintiff's problems were due to a herniated or ruptured disc.
Thereafter plaintiff was treated by Doctor Cook approximately forty times prior to the trial herein. The doctor testified to the effect that he considered plaintiff disabled up through the trial. He persisted in his original opinion that plaintiff had a degenerative disc, attributable directly to the January 16th injury, and felt that even with an operation the chances were slim that plaintiff would recover and return to heavy labor.
Prior to this suit plaintiff was sent by the defendant-insurer to Dr. D. M. Kingsley, an Alexandria orthopedic surgeon, who examined the plaintiff on one occasion on May 16, 1974. After performing a physical examination, in addition to making several laboratory tests, the physician several laboratory tests, the physician concluded plaintiff's problems were due to rheumatoid arthritis.
Accordingly, Doctor Kingsley forwarded a report to the defendant-insurer, by letter dated May 16, 1974. His diagnosis was degenerative arthritis of the spine and the doctor opined that plaintiff had some disability, but not due to trauma. He further indicated that the January, 1974, accident was in his opinion a back strain; that by this time plaintiff should have been over any trauma resulting therefrom; and that with physical therapy, medication, and a back brace plaintiff should have been able "to do anything he was capable of doing before" the accident.[1]
Upon receipt of said letter the defendant did not immediately discontinue workmen's compensation benefits (which it had been paying the plaintiff since the injury) but instead forwarded the above-mentioned radiologist's myelogram report to Doctor Kingsley, seeking a comment thereon. Doctor Kingsley, by letter dated July 15, 1974, subsequently replied, indicating that in view of his neurological findings on clinical examination he would still attribute the myelographic findings to the pre-existing arthritic condition rather than a disc. Doctor Kingsley thereafter examined the myelogram itself and indicated in testimony that it reaffirmed his original opinion.
Following the receipt of the abovementioned July 15th report the defendant insurer discontinued workmen's compensation benefits. This suit subsequently followed.
After a trial on the merits the District Judge concluded in effect that plaintiff was disabled due to the accident of January 16, 1974, and was therefore entitled to total and permanent disability benefits for the maximum period, as well as medical and travel expenses. He further awarded the plaintiff $3,500.00, as penalties and attorney's fees, finding that defendant was unjustified in terminating compensation based solely upon the reports of Doctor Kingsley, in the face of the positive myelogram and the reports of both Doctor Ashby and Doctor Cook that plaintiff was disabled.
No real dispute exists as to whether the plaintiff suffered a job related accident and that he is now totally and permanently disabled. The initial question on appeal is whether the disability was caused or aggravated by the January 16, 1974, accident or due entirely to a pre-existing condition.
The disability of a workmen's compensation claimant "is presumed to have resulted from an accident, if before the accident the injured person was in good health, but commencing with the accident the symptoms of the disabling condition appear and continuously manifest themselves afterwards, provided that the medical evidence shows there to be a reasonable possibility of causal connection between the accident and the disabling condition." Bourque v. Monte Christo Drilling Corporation, *25 221 So.2d 604 (La.App.3rd Cir. 1969). See also Porter v. Augenstein Construction Company, 280 So.2d 861 (La.App.3rd Cir. 1973); White v. E. A. Caldwell Contractors, Inc., 276 So.2d 762 (La.App.3rd Cir. 1973); Freeman v. Standard Materials, Inc., 246 So.2d 258 (La.App.1st Cir. 1971).
This is clearly the situation herein. The record shows that plaintiff had two previous job related back injuries, one in February, 1970, and the other in June, 1971. Both were termed by the treating physician, Doctor Cook, to be "strains" or "sprains", from which he opined the plaintiff had completely recovered. Recovery is evidenced by the fact that following the abovementioned "second injury" of June, 1971, the plaintiff returned to his former job duties, performing the heavy labor of his occupation without difficulty, for some two and one-half years before the present accident.
Roberson testified that since the January, 1974, accident he experiences constant lower back pain, is unable to do any type of work, and that daily medication for pain is required. As aforementioned, the medical evidence also preponderates to the effect that following the present accident the plaintiff has been totally and permanently disabled.
Further, as this court pointed out in Kennedy v. Calcasieu Paper Company, 262 So.2d 800 (La.App.3rd Cir. 1972), "the principle is well established in the jurisprudence of this state that the employer takes the employee as he finds him. The worker who is normally susceptible to disability from an accident is entitled to the full protection of the compensation statute, even though the same accident would cause little or no harm to a healthy worker. Nor is it important that the diseased or weakened condition might alone have eventually produced the disability. An employee's disability is fully compensable when precipitated by an industrial accident, even though caused, also, by a contributing, pre-existing, dormant physical condition, or pre-disposition. Parish v. Fidelity & Casualty Company of New York, 124 So.2d 234 (La.App.2nd Cir. 1960), cert, denied, and citations therein." See also Williams v. Hudson East, 261 La. 959, 261 So.2d 629 (1972); Odom v. Kaiser Aluminum & Chemical Corporation, 282 So.2d 580 (La.App.4th Cir. 1973); Johnson v. Employers Mutual Liability Insurance Company of Wisconsin, 250 So.2d 38 (La.App.3rd Cir. 1971); Clement v. Fidelity & Casualty Co. of New York, 220 So.2d 575 (La.App.3rd Cir. 1969).
The medical testimony reflects that the 61-year old plaintiff was experiencing degenerative arthritis at the time of and following the present injury, said arthritis developing for a number of years preceding the accident sued upon herein. There is, however, a divergence of opinion as to the effect, if any, this arthritic condition had on plaintiff's present disability.
Doctor Cook opined that plaintiff's disability was due to nerve root involvement via a degenerative disc. He further indicated that because of plaintiff's history, i.e. working previous to the January, 1974, accident, he felt that the arthritic condition was not the cause of his disability.
Doctor Ashby, although attributing plaintiff's pain to his arthritic condition, opined that the cause of the nerve irritation and resulting disability was probably due to the bony spurs "in association with the injury" or "because of the trauma associated with the arthritic condition."
Doctor Kingsley, on the other hand, opined that plaintiff's disability was due to arthritis, rather than trauma associated with the accident. The doctor, however, admitted that after only one examination it was not really possible to pinpoint the causation of a patient's complaint to disc degeneration (which he found present in plaintiff at almost every level), rather than aggravation caused by trauma. In this regrad *26 he further indicated that only after examining the patient over an extended period of time could such a conclusion be adequately reached, this is, if improvement occurred after the trauma one could medically and reasonably say the trauma had nothing initially to do with the disability. The doctor also testified that a trauma was more apt to cause pain to an arthritic back, such as plaintiff's than one without, and that the trauma was a definite factor in plaintiff's onset of pain.
Under the foregoing medical evidence the trial judge concluded that plaintiff's disability was due to trauma resulting from the work related accident of January 16, 1974. It is evident that the judge relied heavily on the testimony of the treating physician who had seen the plaintiff on over forty occasions following the accident and for seventeen or eighteen years previous thereto. We find no error on his part in so doing. See Touchet v. Fidelity & Casualty Company of New York, 264 So.2d 752 (La.App.3rd Cir. 1972); Gates v. Ashy Construction Company, 171 So.2d 742 (La.App.3rd Cir. 1965).
After reviewing all of the evidence we cannot say that plaintiff's disability is due solely to the pre-existing arthritic condition. At the very least, the evidence indicates that the January, 1974, accident aggravated the arthritic condition to an extent that plaintiff subsequently became disabled. Under the foregoing jurisprudence the plaintiff is therefore entitled to total and permanent disability benefits.
The final issue raised is whether penalties and attorney's fees are due, that is, whether the defendant-insurer was "arbitrary, capricious, or without probable cause" in discontinuing workmen's compensation benefits on July 24, 1974. LSA-R.S. 22:658.
An insurer's conduct in discontinuing compensation benefits must be judged primarily upon the facts existing and known to it at the time payment was stopped. These facts must justify discontinuance. Lee v. Smith, 248 La. 16, 176 So.2d 413 (1965); Carroll v. Southern Casualty Insurance Company, 285 So.2d 370 (La.App.3rd Cir. 1973), writ denied 288 So.2d 356 (1974).
Herein the defendant-insurer relied on two reports by Doctor Kingsley, who examined the plaintiff at the defendant's request. Doctor Kingsley stated explicitly that in his opinion plaintiff's disability was not due to the trauma caused by the accident in January, 1974, but instead was due to his preexisting arthritic condition. He did not change his opinion even in the face of the myelogram report.
When the evidence supports the existence of a valid dispute between the claimant and an insurer concerning the cause of the claimant's disability, no penalties and attorney's fees are due. In this regard, an insurer is justified in relying on medical reports to the effect that the claimant's disability is due to a pre-existing condition. Leblanc v. Mangel's of Louisiana, Inc., 306 So.2d 422 (La.App.3rd Cir. 1975); Odom v. Kaiser Aluminum & Chemical Corporation, supra.
Accordingly, plaintiff's claim for penalties and attorney's fees should have been denied.
Defendant also seeks an amendment of the District Court judgment on the basis that said judgment failed to credit the insurer with previously paid workmen's compensation benefits. This omission is readily conceded by the plaintiff and an amendment is therefore in order.
For the above and foregoing reasons the judgment of the trial court is reversed insofar as it granted plaintiff penalties and attorney's fees, and it is hereby ordered, adjudged, and decreed that same be denied. The judgment is amended and recast so as to award the plaintiff permanent and total workmen's compensation benefits at the *27 rate of $59.54 per week, not to exceed 500 weeks, subject to a credit for compensation previously paid. In all other respects the district court judgment is affirmed. Costs of this appeal are equally divided between appellee and appellant.
Affirmed in part, amended in part, reversed in part, and rendered.
FRUGE, J., concurs in part and dissents in part with written reasons.
FRUGE, Judge (dissenting in part and concurring in part).
I respectfully dissent from the portion of the decree which denies the plaintiff, Roberson penalties and attorney's fees. In all other respects I agree with the decision as written.
NOTES
[1] Although making this statement in the May 16th report, the testimony of Doctor Kingsley, in deposition form, clearly indicates that he considered the plaintiff disabled to perform heavy, arduous, physical labor.