322 So.2d 816 (1975)
Truly HORN, Plaintiff-Appellee,
v.
VANCOUVER PLYWOOD COMPANY et al., Defendants-Appellants.
No. 5214.
Court of Appeal of Louisiana, Third Circuit.
November 20, 1975.
Smitherman, Smitherman, Lunn, Hussey & Chastain by Merritt B. Chastain, Shreveport, and William E. Skye, Alexandria, for defendants-appellants.
G. F. Thomas, Jr., Natchitoches, for plaintiff-appellee.
Before CULPEPPER, DOMENGEAUX and PAVY, JJ.
DOMENGEAUX, Judge.
This is a workmen's compensation suit. The plaintiff, Truly Horn, was injured while in the employ of defendant, Chester B. West, a sub-contractor of defendant Vancouver Plywood Company. West's workmen's compensation insurer, Parliament Insurance Company, paid plaintiff weekly compensation benefits for a period of twelve weeks and then ceased payment. Plaintiff brought this action to have the payments resumed, and the district court rendered judgment on his behalf and held all three defendants liable in solido for payment of workmen's compensation benefits for total and permanent disability. The District Court also held Vancouver and Parliament liable for the statutory penalties of interest and attorney's fees under R.S. 22:658. From this judgment the *817 defendants have appealed. The plaintiff has answered the appeal requesting additional attorney's fees to cover the services of his attorney in connection with this appeal.
The plaintiff is an individual with a long history of back injuries and related problems. In 1954 he underwent surgery for a ruptured disc and three years later, in 1957, sought medical attention concerning his back problem from Dr. Heinz K. Faludi, a neurosurgeon in Shreveport, Louisiana. Doctor Faludi treated the plaintiff for a number of years and in 1966 plaintiff again underwent surgery for a ruptured disc, a work-related injury. After an unsuccessful attempt to repair the ruptured disc by Doctor Ray King of Shreveport, Doctor Faludi performed a third operation on the plaintiff, which was evidently successful. After a recovery period of approximately one and one-half years, the plaintiff returned to work and held various jobs for the next several years. The plaintiff was employed for a time as a taxi driver in Shreveport, Louisiana. He later engaged in more strenuous activity, particularly that of operating large diesel-powered trucks. For some time the plaintiff drove a tractor-trailer rig from coast to coast, a dump truck, and a logging truck which he was operating at the time of his accident.
On April 22, 1974, the plaintiff had been employed by defendant, Chester B. West, for approximately twenty days as a logging truck driver. This work entailed the operation of a large heavy duty truck in thickly wooded areas with poor roads. The plaintiff was required to drive this vehicle over rugged terrain and to further assist in loading and lashing his cargo. The testimony adduced at trial indicated that this type of work is considered to be quite rigorous.
On the morning of April 22, 1974, the plaintiff was attempting to descend from his vehicle under rainy conditions. He slipped and fell, striking his back and buttocks on the running board of the truck cab. This fall caused sharp pains in the plaintiff's back, and he experienced difficulty in using his legs.
Later that day plaintiff was taken to a hospital in Many, Louisiana, by his employer and was placed in traction for four days. The attending physician, Dr. V. M. John, diagnosed the plaintiff's injury as contusions of the back and lumbo-sacral sprain. He discharged the plaintiff on April 26, 1974.
Thereafter the plaintiff experienced considerable pain and discomfort in his back and hip areas. He was completely unable to perform the type of heavy work which he had done prior to his accident and was also unable to engage in any type of activity which required his standing or sitting for more than a few hours. In addition the plaintiff had difficulty sleeping and suffered from general overall discomfort.
Parliament Insurance Company, the insurer of defendant West, paid weekly compensation benefits to the plaintiff from the date of his accident until July 15, 1974. At that time Parliament's adjuster found that plaintiff was working as a taxi driver in Natchitoches, Louisiana. The adjuster also received certain medical information, specifically a report stating that the plaintiff had been discharged from the Many hospital. Based upon this information, the adjuster concluded that the plaintiff was no longer disabled, and Parliament, based upon this information, terminated his compensation.
In an effort to have his compensation benefits resumed the plaintiff initiated this action. The trial judge found that the plaintiff was totally and permanently disabled as a result of the above mentioned accident, and further that the defendants Parliament and Vancouver had terminated the compensation payments without probable cause, thus incurring the 12% statutory interest penalties and liability for attorney's fees of $2,000.00.
*818 The trial court further recognized the execution of an indemnity agreement between the defendants in favor of Vancouver Plywood Company, wherein defendants West and Parliament Insurance Company agreed to indemnify Vancouver for any amount which the latter may be cast in judgment. Therefore the trial judge ruled that as third party plaintiff, Vancouver Plywood Company, Inc. should have and recover judgment against the third party defendants, West, and Parliament Insurance Company.
The issues raised by this appeal are:
FirstIs the plaintiff's total and permanent disability a result of the injury which he suffered while in the defendant's employ?
SecondWere the actions of Parliament and Vancouver arbitrary, capricious, and without probable cause in terminating plaintiff's weekly compensation?
ThirdShould plaintiff be granted additional attorney's fees to cover the cost of prosecuting this appeal?
FourthShould the indemnity agreement between the defendants be recognized and given effect?
Unlike most workmen's compensation cases there is no issue here as to the plaintiff's degree of disability. It is conceded by all parties that he is totally and permanently disabled.
The medical evidence in this case is not altogether consistent. Plaintiff was examined initially by Dr. V. M. John at the Many, Louisiana, hospital. Doctor John's diagnosis of plaintiff's injury indicated contusions of the back and lumbo sacral sprain.
On May 2, 1974, shortly after the accident, plaintiff was examined by Dr. Heinz K. Faludi, a neurosurgeon, in Shreveport, Louisiana. On that date Doctor Faludi formed the opinion that the plaintiff had suffered contusions in the area of the left hip and also a lumbosacral sprain. Doctor Faludi prescribed medication and a back support and after another examination on May 30, 1974, continued the treatment with a slight alteration in the medication. Upon re-examination on July 28, 1974, Doctor Faludi found the plaintiff still complaining of stinging and burning pain in the lower back region and muscle spasms in the lumbar region. Doctor Faludi's diagnosis at that time was that plaintiff's accident had caused a contusion of the left hip and a lumbosacral sprain which was super-imposed upon the plaintiff's prior injury. Doctor Faludi placed the plaintiff in the hospital in Shreveport from July 18th through July 23, 1974. At that time he performed a lumbosacral myelogram and found no ruptured disc but discovered a reverse spondylolisthesis at L-4 and L-5 and spondylosis above, both congenital problems. Doctor Faludi concluded that the plaintiff's accident had the effect of aggravating his prior condition. Doctor Faludi further examined the plaintiff on August 23, 1974, and felt that plaintiff had improved somewhat but was still prohibited from doing any type of heavy work. Doctor Faludi felt at this time, however, that the plaintiff's condition had reverted back to its normal status prior to the accident which he determined to be one of total and permanent disability. Upon his final examination of plaintiff on December 13, 1974, Doctor Faludi concluded that the plaintiff was still disabled from doing heavy or any work requiring strenuous use of the back. Again he determined that the plaintiff's difficulty was "a matter of the past and this was just one of his usual flare-ups. He has had flare-ups before." (Doctor Faludi's deposition, page 19) When asked to what flare-ups he was referring the doctor replied, "Well, numerous flare-ups prior to this, other times, the 50s and 60s." (Doctor Faludi's deposition, page 20).
*819 Plaintiff was next examined by Doctor David T. Henry, a general practitioner and surgeon in Natchitoches, Louisiana, on January 17, 1975. It was Doctor Henry's opinion that the plaintiff was "not capable of performing any work that would require prolonged standing, prolonged sitting, bending or lifting". (Tr. 71). Doctor Henry was asked his opinion of the cause of plaintiff's disability. He testified:
"It is my opinion that at the time of his injury in April he reinjured his old previous back area where the surgical procedures had been done, adjacent structures to that area, and that he continues to have some muscular ligamentous or bony difficulties related to reinjury of his old problem."
Doctor Henry was asked to reiterate by plaintiff's counsel as follows:
"Q. Doctor Henry, in the report that you rendered me, I believe you stated that in your opinion that Mr. Horn's previous back condition was aggravated by the injury that he subjected his back to in April of 1974, and that in your opinion that this was a permanently disabling situation of his lower spine?
A. That is my opinion, correct."
Finally, plaintiff was examined on February 19, 1975, by Doctor T. E. Banks, an orthopedist in Alexandria, Louisiana. Doctor Banks was unable to evaluate plaintiff's condition relative to this litigation. However, he felt that in light of plaintiff's current condition, that he was a candidate for continued conservative therapy.
After reviewing all the medical evidence we find that plaintiff was an individual with a very suspect back condition. The several doctors in this case seem to agree that plaintiff was more susceptible to reoccurring back injury than an ordinary worker would be. However, even in light of Doctor Faludi's testimony the fact is inescapable that the plaintiff had worked at difficult, strenuous, heavy labor for a period of some 6 to 8 years following his last surgical procedure.[1] It is inconceivable that a man who is now admittedly totally and permanently disabled could have been in the same condition during that period of difficult physical activity. Therefore, we must conclude that plaintiff's condition is worse now than it was prior to his injury.
The rule is well accepted in this state that an employer takes an employee as he finds him. Kennedy v. Calcasieu Paper Company, 262 So.2d 800 (La.App. 3rd Cir. 1972). Granted, plaintiff was a questionable employee for the type of work in which he was engaged at the time of his injury. However, he was hired and performed his work satisfactorily for a period of twenty days before his accident. Plaintiff's employer had every opportunity to delve into plaintiff's medical history but neglected to do so. Thus he employed the plaintiff in his existing condition and must bear the responsibility for plaintiff's injury. Clearly plaintiff was a reasonably able-bodied man capable of performing heavy labor prior to his accident, and now he is totally and permanently disabled as a result of the accident while in defendant's employ. There can be no other conclusion but that the accident of April 22, 1974, was the cause of the disability. The plaintiff has met his burden of proof that his current status of disability is the result of his work related injury. Bourque v. Monte Christo Drilling Corporation, 221 So.2d 604 (La.App. 3rd Cir. 1969); Gates v. Ashy Construction Company, 171 So.2d 742 (La.App. 3rd Cir. 1965).
Plaintiff received workmen's compensation benefits from defendant Parliament Insurance Company from the date of *820 his injury until July 15, 1975. At that time the defendant's insurance adjuster discovered the fact that the plaintiff was working as a cab driver in Natchitoches, Louisiana. In fact the plaintiff admitted that he was driving a taxicab part-time but that he was having great difficulty in doing so. This fact was communicated to the adjuster shortly after the compensation benefits were cut off. Apparently the adjuster made no attempt to determine whether or not the plaintiff was able to return to the type of work in which he was engaged prior to his accident. In addition the adjuster testified that he received a report from Doctor V. M. John concerning the plaintiff's treatment at the Many Hospital. This report states that plaintiff was suffering from contusions of the back and a lumbosacral sprain and that the injury would not result in a permanent defect. At line 19 of the report the question "Is further treatment needed?" is asked. This question is answered in the negative. However, the following two lines of the standard form report deal with the ability of the patient to resume regular or light work. The doctor made no statement as to when the plaintiff would be able to return to his job. Based upon this incomplete medical report and the fact that plaintiff was working part-time as a cab driver, albeit with great difficulty, the adjuster concluded that plaintiff was no longer entitled to benefits under the workmen's compensation act. The trial judge found that the adjuster's actions were arbitrary, capricious, and unreasonable within the scope of R.S. 22:658, and awarded the plaintiff attorney's fees and interest at the rate of 12% pursuant to the statute. A determination of whether an insurer is arbitrary, capricious or unreasonable as contemplated by R.S. 22:658 is essentially a question of fact. Cryer v. Gulf Insurance Company, 276 So.2d 889 (La.App. 1st Cir. 1973).
We find no manifest error in the trial judge's ruling that the insurer's actions constitute an arbitrary, capricious, or unreasonable behavior under this statute.
In answering this appeal the plaintiff requests additional attorney's fees of $1,000.00 as compensation for the effort required in prosecuting this appeal. This court has consistently recognized the fact that litigants successful at the trial level, must incur additional expenses to protect their rights upon appeal. Accordingly we have granted additional attorney's fees in the amount of $500.00 in similar cases. Benoit v. Travelers Insurance Company, 251 So.2d 87 (La.App. 3rd Cir. 1971); Thibodeaux v. Associated Distributing Company, 260 So.2d 46 (La.App. 3rd Cir. 1972); Ryder v. Insurance Company of North America, 282 So.2d 771 (La.App. 3rd Cir. 1973); Payne v. Travelers Insurance Company, 299 So.2d 913 (La.App. 3rd Cir. 1974); Delahoussaye v. Allen Action Agency, Inc., 300 So.2d 575 (La.App. 3rd Cir. 1974). We therefore increase plaintiff's award of attorney's fees from $2,000.00 to $2,500.00 to cover the costs of this appeal.
Finally, as to the issue of the indemnity agreement between the defendants, we find no error in the trial judge's recognition and application of this agreement, holding that defendants Chester B. West and Parliament Insurance Company shall indemnify Vancouver Plywood Company, Inc. for all amounts which the latter has been cast in judgment in this action.
For the above and foregoing reasons, the judgment of the trial court is amended to increase the award of attorney's fees therein from $2,000.00 to $2,500.00, and in all other respects it is affirmed with costs of the appeal being assessed to appellants.
Amended and affirmed.
NOTES
[1] Prior to the May 2, 1974, examination, Doctor Faludi had not see plaintiff since October, 1966.