DOMENGEAUX, Judge.
Plaintiff, Alfred Chelette, brought this action against the defendant, Travelers Insurance Company, the workmen’s compensation insurer of his employer, The Barton Corporation, to recover benefits for total and permanent disability resulting from a work-related injury. The trial court rendered judgment in plaintiff’s favor, finding him totally and permanently disabled and entitled to commensurate benefits under the workmen’s compensation act. From this judgment the defendant-insurer has appealed.
The essential question raised by this appeal is whether the plaintiff proved by a preponderance of the evidence that the injury which totally and permanently disabled him was a result of an accident in which he was involved while in the employ of the defendant’s insured.
The facts surrounding plaintiff’s injury are virtually undisputed. Plaintiff was employed for a number of years as an industrial welder. On October 15, 1973, he was in the employ of The Barton Corporation, working on a job at a carbon black plant at Eola, Louisiana. He and a coworker attempted to lift a large iron plate weighing approximately 350 lbs. The plate slipped and struck plaintiff in the vicinity of the right knee, knocking him to the floor. Following the accident plaintiff experienced difficulty with the injured area and sought medical assistance from Dr. A. John Tassin, Jr., a general practitioner in Ville Platte, Louisiana, on October 18, 1973. Doctor Tassin diagnosed Mr. Chel-ette’s injury as “much trauma to right knee” and admitted him to the Ville Platte hospital on the day of the initial examination. Plaintiff was discharged from the hospital on October 20, 1973.
Doctor Tassin referred plaintiff to Dr. J. Frazier Gaar, an orthopedist in Opelou-sas, Louisiana. Doctor Gaar examined plaintiff on November 7, 1973, and again on November 14, 1973. The doctor found that plaintiff’s knee appeared to be healing properly and allowed him to return to work with the proviso that plaintiff exercise caution in so doing. Approximately one month after the occurrence of the ac *917 cident plaintiff attempted to resume his work activity but was unsuccessful and immediately suffered a worsening of his knee condition.
On November 23, 1973, Mr. Chelette returned to Doctor Tassin who found the plaintiff’s knee very swollen and hot and accompanied by a fever of 104 degrees. On that day Doctor Tassin hospitalized plaintiff for the second time, until the symptoms subsided. As to the degree of severity of plaintiff’s knee condition at that time, the doctor stated in his deposition:
“His knee injury, in my opinion, was quite severe, and I think when anybody goes in the hospital with a hot, swollen knee, with a temperature of 104, they’re a sick person. I think his knee injury was quite serious. I paid all of my attention — not—well, most of my attention was paid — involving his right knee. I wouldn’t have gone through a complete examination of his low back, being involved mostly with his knee.”
On December 21, 1973, plaintiff was examined by Dr. Ray J. Beurolot, an orthopedist in Alexandria, Louisiana. Doctor Beurolot then diagnosed plaintiff’s condition as a resolving contusion of the right knee. At that time plaintiff did not complain of any other injury to Doctor Beuro-lot nor had he complained of injury to any other part of his body during the previous examinations by Doctors Tassin and Gaar. Doctor Beurolot throughly questioned plaintiff as to his condition and elicited no evidence of pain other than the difficulty in the knee area.
On February 12, 1974, plaintiff returned to Doctor Tassin for further examination of the knee and this time complained that “his back had been hurting for some time”. Doctor Tassin immediately referred Mr. Chelette back to Doctor Gaar who examined him on February 20, 1974. At that time Doctor Gaar was unable to discover any knee instability relative to plaintiff’s accidental injury. At this time plaintiff did not call Doctor Gaar’s attention to any problem with his lower back area. Plaintiff saw Doctor Gaar again on April 16, 1974, and informed him that another attempt to return to work had been unsuccessful. He told Doctor Gaar that his entire right leg had gotten worse and this time complained of episodes of low back pain. Doctor Gaar’s x-ray examination of plaintiff’s spine showed mild degenerative changes in the upper lumbar area and disclosed nothing of any greater significance to the examiner. Doctor Gaar concluded that plaintiff’s problem appeared to be “that of a peripheral nerve root irritation, most likely from a lumbar disc”. Doctor Gaar re-examined plaintiff on May 1, 1974, and found no improvement in his condition. The doctor admitted plaintiff to the hospital on that date and performed a lumbar myelogram, which he determined to be essentially negative. Plaintiff returned approximately two weeks later, on May 13, 1974, and Doctor Gaar was unable to diagnose the cause of plaintiff’s continuing complaints.
Thereafter, on August 7, 1974, plaintiff was referred to and examined by Dr. John F. Loupe, an orthopedist in Baton Rouge, Louisiana. At that time Doctor Loupe formed the impression that plaintiff could possibly be suffering from a disc herniation on his left side. The doctor was unable to satisfactorily interpret the myelo-gram which had been performed by Doctor Gaar and suggested that the plaintiff be re-myelogramed. After another examination on November 7, 1974, Doctor Loupe reassessed plaintiff’s condition to be that of a possible disc herniation in the midline area and again recommended a second myelogram and possible exploratory surgery.
Plaintiff’s final examination was conducted by Dr. Steven Goldware, a neurosurgeon in Lafayette, on December 2, 1974. Doctor Goldware reviewed Doctor Gaar’s myelogram and indicated the possibility of *918 a herniated disc at L-4-5. Doctor Gold-ware concluded that plaintiff was disabled from doing any type of heavy work at this time and suggested that another myelo-gram should be performed. Doctor Gold-ware also concurred in the finding that surgery was a possible necessity.
Since plaintiff's knee injury was not totally and permanently disabling, the basic thrust of defendant’s argument is that since plaintiff did not report his back problems until four months after the accident, there is insufficient proof to show proper causal connexity between the accident and the disabling back injury.
However, the general medical concensus in this case was to the effect that two injuries can occur simultaneously with the more severe and immediate one tending to retard recognition of the second injury. As the more obvious injury heals, the secondary injury becomes more apparent. The trial judge took cognizance of this medical phenomenon and referred to Doctor Loupe’s deposition in his reasons for judgment as follows:
“Doctor Loupe feels that the plaintiff does have a disc involvement at the level of L4-L5. With reference to plaintiff’s failure to complain of pain in the back at the time of the thigh and knee injury, the doctor answers at page 9 of his deposition that plaintiff’s immediate pain would be where the most trauma is, and that’s on the right thigh. He would direct his attention probably initially to the right thigh injury. He analogizes this to having pain in one hand, and you strike the other hand with a hammer, you forget about the pain in the opposite hand and think about that pain where it was struck by the hammer. He says you would call that a ‘damping process’ where the area having the greatest amount of pain is going to damp out the other and ‘override’. Doctor Loupe states in his deposition that plaintiff could certainly have aggravated an old injury.”
Again in reference to this “damping process” the trial judge was aware of Doctor Goldware’s deposition and quoted from it as follows:
“ ‘It seems that there are only so many channels for pain to get through, and the worst seem to take over, and we ignore the pain that doesn’t . . . that isn’t as bad. It is conceivable that if this pain was mainly from — if he had a terrific pain in the knee then his back pain might not be as apparent .... It is conceivable that his back and leg pain might not be very bad until he got up and tried to get going again.’ ”
In addition Doctor Goldware pointed out in his deposition that the basic treatment for a herniated disc and back disease is bed rest, so therefore if plaintiff was relatively inactive during the recuperative period for the knee injury, there would probably be a lag in the recognition of the back injury. Doctor Gaar was of the opinion that plaintiff had no back injury, based primarily upon his negative findings in the myelographic examination. However, even Doctor Gaar conceded the possibility that a back injury could be somewhat concealed by a more immediate and severe injury. Doctor Beurolot, on the other hand, felt that plaintiff’s back injury should have manifested itself within a few weeks of the accident. The trial court was aware of Doctor Beurolot’s opinion and referred to it as follows:
“The deposition of Doctor Beurolot is in the record, and the court has read it and considered it. It does not substantially alter the medical facts as testified to above.”
The disability of a workmen’s compensation claimant is presumed to have resulted from the accident, if before the accident the injured person was in good health, but commencing with the accident the symptoms of the disabling condition appear and continuously manifest themselves afterwards, provided that the medi *919 cal evidence shows there to be a reasonable possibility of causal connection between the accident and the disabling condition. See Roberson v. Liberty Mutual Insurance Company, 316 So.2d 22 (La.App. 3rd Cir. 1975), and cases cited therein.[1]
The evidence adduced at trial showed that the plaintiff was a highly active individual prior to his accident on October 15, 1973. In addition to his normal work activities plaintiff normally performed a number of small welding jobs at his home after work hours. After his accident he sold his larger private welding equipment and retained only a smaller rig which was used by one of his sons. Since his accident plaintiff has been unable to engage in any sort of strenuous activity and for all intents and purposes is totally and permanently disabled from doing the type of work in which he was engaged at the time thereof.
The evidence shows that Mr. Chelette was plagued by severe knee problems which required hospitalization as late as early December, 1973. In February, 1974, the plaintiff informed Doctor Tassin that he had been suffering from back difficulties for some time. Doctor Tassin, in a report to plaintiff’s attorney, which was introduced into evidence, stated:
“In the early part of February this patient began complaining of some pepn in his lower back which he states he had been having for a considerable amount of time and that this had become worst in the past few months because of the severity of the pain in his knee he had not paid very much attention to his lower back.”
We agree with the trial judge in finding it highly probable that as the knee injury subsided, the back injury became more apparent. Taken as a whole, the medical testimony indicates that a delayed manifestation of a back injury is not an abnormal reaction in a case of this type. This delay is insufficient to destroy the reasonable probability of causal connexity between plaintiff’s disabling injury and his accident on October 15, 1973.
As the Supreme Court stated in Canter v. Koehring Company, 283 So.2d 716 (La.1973):
“When there is evidence before the trier of fact which, upon its reasonable evaluation, of credibility, furnishes a reasonable factual basis for the trial court’s finding, on review the appellate court should not disturb this factual finding in the absence of manifest error. Stated another way, the reviewing court must give great weight to factual conclusions of the trier of fact; where there is conflict in the testimony, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review, even though the appellate court may feel that its own evaluations and inferences are as reasonable.”
Applying the rule of Canter to the instant case, we find no manifest error in the trial judge’s finding that plaintiff’s disabling back injury was the result of the accident in which he was involved on October 15, 1973.
For the above and foregoing reasons the judgment of the trial court is affirmed. Costs of this appeal are assessed against the defendant.

Affirmed.

CULPEPPER, J., dissents and assigns written reasons.

. The Roberson case was reargued before a five judge panel pursuant to an order of the Supreme Court in accordance with Article 5, Section 8(B) of the Constitution of 1974, 320 So.2d 201 (La.1975), and after reargument, the decision was reinstated. 321 So.2d 398 (La.App. 3rd Cir. 1976).