MILLER, Judge.
Defendants USF&G and its insured Hix-son Brothers, Inc., appeal the trial court award of total and permanent workmen’s compensation benefits to plaintiff Wilmer G. Gatheright. Plaintiff answered the appeal seeking penalties and attorney’s fees. We affirm.
Appellants contend that Gatheright waived his rights to workmen’s compensation by signing the following instrument without which Gatheright would not have been employed.
“February 18, 1966
“TO WHOM IT MAY CONCERN:
“I, Wilmer Gene Gatheright, hereby waive all compensation and would not hold Hixson Brothers or the Insuror of Hixson Brothers responsible in the event of a back injury directly connected with a pre-exist-ing injury. This pre-existing injury was a Lumbo-Sacral Strain dating back to 1952. All records relating to this injury are on file with the Veterans Administration. I would grant and authorize a examination of these records by Hixson Brothers or the Insurers of Hixson Brothers.
“s/ Wilmer Gene Gatheright Wilmer Gene Gatheright
“WITNESSES:
s/ D. M. Carlisle s/ Martha Hunt”
This “waiver” was required because Gatheright’s application for employment filed a year earlier stated that he had a prior back injury, a “lumbo-sacral strain 1952.”
Mr. Carlisle was the manager of Hix-son Brothers, Inc. and Martha Hunt was his secretary. The agreement was worded by Mr. Carlisle and his secretary (Tr. 35) and signed on the morning that Gatheright was employed. Defendants state that the agreement was prepared without consultation with counsel.
The applicable provisions of the Workmen’s Compensation Statute are LSA-R.S. 23:1038, 1039, 1042 and 1043.
“§ 1038.
“This Chapter, except R.S. 23:1042 and R.S. 23:1043, shall not apply to any employer or employee engaged in any trade, business or occupation specified in R.S. 23:1035 or in any that may be determined to be hazardous under the provisions thereof, unless prior to the injury they have so elected by agreement, either expressed or implied, as hereinafter provided. Such an agreement shall be a surrender by the parties thereto of their rights as against each other to any method, form, or amount of compensation, or damages, or determination thereof other than as provided in this Chapter, and shall bind the employee himself, his widow, and relatives, personal representatives, heirs, and dependents as well as the employer and those conducting his business during bankruptcy and insolvency.
*578 “§ 1039.
“Every contract of hiring, verbal, written or implied between an employer and an employee engaged in any trade, business or occupation specified in R.S. 23 :- 1035 or engaged in any trade, business or occupation that may be determined to be hazardous under the provisions thereof shall be presumed to have been made subject to the provisions of this Chapter, unless there is as a part of the contract an express statement in writing, either in the contract itself or by written notice by either party to the other, that the provisions of this Chapter other than R.S. 23:1042 and R.S. 23:1043 are not intended to apply; and it shall be presumed that the parties have elected to be subject to the provisions of this Chapter, and to be bound thereby, unless such election is terminated as hereinafter provided.
“§ 1042.
“If an employee has elected to come under this Chapter and his employer has elected not to come under this Chapter, then if an action is brought by the employee or his dependents to recover for personal injury sustained by the employee arising out of and in the course of his employment, after such election by the employer, it shall not be a defense :
(1) That the employee assumed the risks inherent, incidental to, or arising out of his employment, or the risks arising from the failure of the employer to provide and maintain a reasonably safe place to work or arising from the failure of the employer to furnish reasonably safe tools and appliances, or that the employer exercised reasonable care in selecting reasonably competent employees in the trade, business, or occupation.
(2) That the injury was caused by the neglig nee of a fellow employee.
(3) That the employee was negligent.
And it shall be presumed that the injury to the employee was the direct result and arose out of the negligence of the employer, and that such negligence was the proximate cause of the injury; and in such case the burden of proof shall rest upon the employer to rebut the presumption of negligence, unless before the injury such election has been waived as provided in R.S. 23:1040.
“§ 1043.
“If an employer has elected to come under this Chapter and his employee has elected not to come under this Chapter, then if an action is brought by the employee or his dependent to recover damages for personal injury sustained by the employee and arising out of and in the course of his employment, after such election by the employee, the employer shall have all the defenses which he would have had if this Chapter had not been enacted, unless before the injury, such election has been waived as provided in R.S. 23:1040.”
Appellants contend that Gatheright’s waiver complied with the provisions of the quoted statute; that if an employee can waive the provisions of the entire compensation statute, he can waive it with respect to a specific physical condition. It is argued that public policy would be best served by allowing such waivers because this would encourage employers to hire people who have physical disabilities when without such a waiver, an employer would be reluctant to hire one with a built-in tendency for injury or aggravation.
Appellant directs attention to Malone’s “Louisiana Workmen’s Compensation Law and Practice” section 59, page 73.
“There is no provision in the Act as to the consequences of a mutual election to exclude the operation of the compensation statute, although it is obvious that an employer who wishes to avoid compensation will probably do so by presenting to the employee a mutual agreement that the Act shall not control. *579 Presumably their respective rights would be regulated as though there were no applicable compensation legislation, which would mean that in the event of an accident the usual employer’s defenses would be available, and the employee would be obliged to sustain the normal burden of proof.” '
The waiver was understood by Mr. Car-lisle to waive “any compensation that (Gatheright) may have been entitled to because of any back injury that he may have received under employ — while employed with us.” Tr. 35. Carlisle understood “That we would not be liable for a back injury.” Tr. 38. He spelled it out at Tr. 39:
“I wanted it made clear with Mr. Gath-eright that in the event he had a back injury due to or he re-injured his back or whatever you might want to call it, due to any work that we had him perform which is lifting — a lot of it — that we would not be held liable nor would our insurer be held liable.
“Q. For compensation as spelled out in (the waiver) D-l ?
A. For anything.
Q. You were waiving all compensation benefits ?
A. For anything. I’m talking about on a back injury.”
At Tr. 206, he explained:
“ . . . —we would not be responsible or our insurers responsible for any injury that he might have to this particular ailment.”
The trial court properly overruled defendant’s motion for summary judgment based on this defense. The defense was properly rejected again following trial on the merits.
The agreement was understood by Mr. Carlisle to waive Gatheright’s claim “for any injury” to his back. This would include tort claims and workmen’s corn-pensation claims. Such waivers are contrary to public policy and are void. Haven v. Munson, 169 So. 819 at 820 (La.App. 1 Cir. 1936).
Alternatively, defendants contend that the trial court erred in finding a causal connection between Gatheright’s claimed accidents of November 28, 1969 and January 19, 1970, and his spinal fusion of L-5-S-1 of March 13, 1970. It is argued that the fusion was required because of Gatheright’s condition prior to the alleged accidents.
Alternatively, defendants contend that the trial court erred in awarding compensation at the rate of $49 per week. The maximum compensation rate of $45 was in effect for the November 28, 1969 accident, but had increased to $49 by January 9, 1970. It is here contended that the surgery was required before the alleged January 19, 1970 accident.
Plaintiff’s history of back injuries dates back to his nine year tour of duty with the Armed Forces. He enlisted with the United States Navy and was on detached duty with the Marine Corps when he fell from a jeep in August of 1953. His injuries were sometimes described as a fracture at L-4, but he returned to full duty within two to six weeks. Three months after his tour of duty with the Marine Corps, he enlisted with the “Air Force” and was stationed at Barksdale (Shreveport) Louisiana. He sprained his back while lifting an X-ray unit and was hospitalized. He was returned to limited duty at England. Air Force Base and injured his back when he slipped and fell. He was hospitalized for almost eighteen months and received a medical discharge in 1959 when he refused surgery for a suspected disc injury. He has received a service connected disability check from the VA of from 20 to 40% *580 except when hospitalized. On those occasions he receives 100% disability checks.
In August of 1963 plaintiff complained (to the VA) of back pains aggravated by lifting or strain. He injured himself lifting a patient. On November 8, 1963, Dr. O. R. Smith, Jr., stated that both “ . . . myelogram and electromyography were normal. Clinically, no neurological signs have been demonstrated.”
In 1963 or 1964 while working for the VA Hospital in Alexandria he stepped into an elevator when it was below the level of the floor. He twisted his back while reaching for a rail and fell into the elevator. Following the elevator accident of March 18, 1964 (diagnosed as sprain of Lumbar 4-5), Dr. Ellis W. Wilkerson concluded on March 31, 1965 that “ . . . findings on examination were unrevealing except for noting an old back condition that this patient had had .... X-ray of the lumbosacral spine was reported as being normal . . . ” He was discharged that date with the notation “No Injury found.” While hospitalized, the VA trained plaintiff to make electroencephalograms.
On August 11, 1964, Dr. T. E. Banks, Jr. (as consultant) reported “that this patient does not show orthopedic disability of a sufficient degree to consider him in need of treatment at the present time.”
While employed by Hixson’s as an ambulance driver, plaintiff’s ambulance was struck by a train. He received neck and back injuries and was treated by Dr. Daniel Kingsley of Alexandria. He received full salary during the six weeks that he was off work and was returned to full duty with his employer. Dr. Kingsley returned plaintiff to full duty with no restrictions. Sometime later, he suffered a hernia while lifting one end of the cover for a concrete vault. This was surgically repaired. He received workmen’s compensation benefits plus an amount from his employer to bring him up to full salary. After a short convalescence he was returned to full duty.
When the funeral home went out of the ambulance business, plaintiff was made an assistant funeral director. His duties required that he and an associate lift cadavers, coffins and other heavy items. Everyone considered plaintiff to be a good worker who did his share of the work.
Plaintiff had worn a back brace almost continuously for more than ten years. He took medication for pain both on and off the job. All employees testified that plaintiff continuously complained of back pains. On cross-examination they admitted that they were not sure whether his complaints concerned low back pain, neck pain (subsequent to the train wreck), ulcer pain, or pain related to nervousness.
Concerning the November 1969 accident, plaintiff could not recall who was working with him when he strained his back lifting a cadaver at the Baptist Hospital. He promptly reported the accident to his employer and reported to the VA Hospital for treatment two or three days later when they were able to see him. He was casted, but returned to limited work. His employer assigned light duty for the two weeks that he wore the plaster cast. He then returned to wearing his back brace and was assigned full duty. While he was wearing the plaster cast, he contacted his attorney and a photograph (P-1) was made showing the cast.
On January 19, 1970 plaintiff and co-employee Mr. Charles Liner were lifting a cadaver from the lowest drawer in the VA hospital morgue in Pineville. While lifting plaintiff exclaimed with pain and Liner heard the complaint. Plaintiff testified that he made himself continue with the lifting and placed the cadaver on the stretcher. Liner didn’t think anything about the incident because he heard plaintiff complain of pain all the time. Plaintiff reported the accident to his employer *581 and made arrangements for another employee to cover for him while he went to the hospital. He was placed in traction and was not released from the hospital until after the fusion operation was performed in March of 1970. The medical testimony is uniform that plaintiff cannot return to his prior employment.
Plaintiff called as his witness Dr. C. W. Lowrey, orthopedic surgeon of Alexandria. He testified that plaintiff’s subjective complaints were consistent with an aggravation of his pre-existing back condition and that this aggravation caused plaintiff to be willing to subject himself to the fusion operation. On cross examination, Dr. Low-rey stated that plaintiff’s pre-existing back condition probably needed surgery. This however is inconsistent with Dr. Banks’ August 1964 conclusion that there was no evidence of disability. It is also inconsistent with Dr. Kingsley’s return to plaintiff to full duty following the train wreck.
There is no manifest error in the trial court determination that plaintiff is totally and permanently disabled and that this disability is related to the January 1970 accident.
An employer takes his employee as he finds him and is liable to him for compensation even when the disabling accident was such only because of a preexisting disorder in the employee. Harrell v. Delta Drilling Co., 251 So.2d 97 (La. App. 3d Cir. 1971); Johnson v. Employers Mutual Liability Insurance Co. of Wisconsion, 250 So.2d 38 (La.App. 3d Cir. 1971).
Neither is there manifest error in the refusal to award plaintiff attorney’s fees and penalties. The defense that plaintiff’s surgery was warranted because of his pre-existing back disability was not arbitrary.
The judgment of the trial court is affirmed at the cost of defendants appellants.
Affirmed.