327 So.2d 462 (1976)
Simpson WILLIAMS, Plaintiff-Appellant,
v.
LIBERTY MUTUAL INSURANCE COMPANY et al., Defendants-Appellees.
No. 5295.
Court of Appeal of Louisiana, Third Circuit.
February 4, 1976.
*465 G. F. Thomas, Jr., Natchitoches, for plaintiff-appellant.
Bolen, Halcomb & Bolton by Gregory Erwin, Alexandria, for defendant-appellee.
Before CULPEPPER, DOMENGEAUX and PAVY, JJ.
DOMENGEAUX, Judge.
This is a workmen's compensation suit. Plaintiff-appellant, Simpson Williams, initiated this action seeking an award for total and permanent disability and statutory penalties and attorney's fees from a work-related injury while in the employ of the defendant, Tidewater Construction Company. The trial court found plaintiff to be totally and permanently disabled but denied his claim for penalties and attorney's fees against his employer's workmen's compensation insurer, Liberty Mutual Insurance Company. Defendants filed a motion for a new trial which was denied. Plaintiff has appealed from that portion of the judgment denying penalties and attorney's fees. Defendants have answered the appeal seeking a reversal of the judgment declaring plaintiff to be totally and permanently disabled and further desire a reversal of the trial judge's denial of their motion for a new trial.
In 1969 plaintiff received a back injury in connection with a work-related accident while in the employ of Sherwood Homes Company. He was treated initially by Dr. Charles Cook of Natchitoches, Louisiana, who examined him on January 16, 1969, and thereafter by Dr. W. W. Fox, an orthopedist in Shreveport, who treated plaintiff on February 1, 1969. Doctor Fox performed an examination and a myelogram and found a slight narrowing of the spinal interspace at the L-5 disc. Doctor Fox determined this to be a degenerative condition, prescribed bed rest, a back brace, and a corset for plaintiff. After an examination on August 5, 1969, this specialist felt that Mr. Williams was probably disabled at that point but did not examine him further. As a result of that accident and injury plaintiff received a lump sum settlement of $3,500.00.
After returning to work Mr. Williams received a second back injury on January 6, 1970, for which he was examined on January 27, 1970, by Dr. Jackie Huckaby, a general practitioner in Natchitoches, Louisiana. Doctor Huckaby suspected a possible ruptured disc and placed the plaintiff in a back brace and prescribed muscle relaxants. Mr. Williams testified that as a result of this injury he was unable to work for a period of nine months to one year.
The above referred to accidents in 1969 and 1970 predated the two accidents hereinafter described, which form the basis of this suit.
Plaintiff was subsequently employed by the defendant herein, Tidewater Construction Company, as a vibrator air tool operator. On October 29, 1973, he was operating a rotary drill which went out of control and struck him in the right hip. At that time he was examined again by Dr. Jackie Huckaby who diagnosed the plaintiff's injury as a left illiac crest bruise. About three week after the accident plaintiff began to complain of pain in his lower back and legs and occasionally lost the use of his left leg. He was forced to take about five days off work even though he had been placed on lighter duty since this accident.
*466 After that injury plaintiff was also examined by Doctor Huckaby's associate, Dr. Fred Willis, who found acute muscle spasms bilaterally in plaintiff's back and lumbosacral area and diagnosed the injury as acute myoligamentous lumbosacral strain.
After returning to work with Tidewater plaintiff was again injured on March 6, 1974, on the job, when an object onto which he was holding broke, causing him to fall into a storage tank, again injuring his back. Plaintiff was taken immediately to Doctor Willis' office, who diagnosed the injury as one similar to the previous one, i. e. acute myoligamentous lumbrosacral strain. Plaintiff attempted to return to work but experienced further difficulty on March 9, 1974, and after being seen by Doctor Willis on that date, the original diagnosis was confirmed. Mr. Williams returned to work with some difficulty and on April 5, 1974, was forced to seek Doctor Willis' care again as he had not responded to treatment.
Doctor Willis diagnosed plaintiff's problem as essentially the same and hospitalized him that same day. This physician had plaintiff x-rayed for evidence of possible disc damage and treated him conservatively with traction for a period of about eight days. Doctor Willis discovered continuous muscle spasms in the lumbosacral area and finally discharged plaintiff with instructions to use a back brace.
Doctor Willis referred plaintiff to Dr. A. E. Dean, Jr., an orthopedic surgeon in Shreveport, Louisiana, who initially examined him on April 12, 1974. This doctor performed subsequent examinations on April 16, 1974, and April 29, 1974. Doctor Dean's examination revealed tenderness in the lower lumbar area and some narrowing at the L-5, S-1 interspace. His initial impression was that plaintiff suffered from a degenerative lumbosacral disc with some nerve root difficulty at times and felt that plaintiff may have possibly had a sprain superimposed upon this above described back condition.
Plaintiff returned to his home where he was continually under the care of Doctor Willis, who was of the opinion that plaintiff suffered from chronic lumbosacral injury with some nerve root irritation and felt that as of his September 12, 1974, examination that plaintiff was disabled from doing heavy work for an indefinite period of time. He also felt that plaintiff had not returned to normal since prior to his injury he had worked well without any pain, but could no longer do so.
Mr. Williams was also examined by Dr. Joseph Thomas, a general practitioner in Natchitoches, Louisiana, who saw him on July 1, 1974. Doctor Thomas felt that plaintiff had a possible ruptured intervertebral disc at about L-4, L-5, and felt that surgery was a possible necessity. He referred plaintiff to Dr. D. F. Overdike, Jr., an orthopedic surgeon in Shreveport, in August. After examining plaintiff on the day of the trial (September 30, 1974) Doctor Thomas discovered no change in plaintiff's condition since his original examination.
Doctor Overdike examined plaintiff extensively on August 8, 1974. He performed a myelogram and electromyogram, and finding no nerve root involvement, diagnosed plaintiff's injury as a lumbar sprain or strain. He hospitalized the plaintiff for eight days and at that time felt that he was disabled. On August 23, 1974, Doctor Overdike was of the opinion that the plaintiff was not ready to return to work at heavy labor. At the time of the trial Mr. Williams was still under the care of this physician.
On two separate occasions, June 27, 1974, and August 26, 1974, the plaintiff was examined by Dr. Austin W. Gleason, an orthopedic surgeon in Shreveport, at the request of the defendant-insurer, Liberty Mutual Insurance Company. Doctor Gleason found no disc problem, no nerve root irritation, and subsequently no disability. His findings were consistent after both examinations. He did, however, find *467 some narrowing of the spaces at L-4, L-5, but did not feel that this condition was sufficient to cause disability. Doctor Gleason admitted, however, that plaintiff was suffering some degree of pain in his back on his final examination.
Defendant, Liberty Mutual Insurance Company, paid plaintiff compensation benefits of $65.00 weekly from April 8, 1974, until June 16, 1974, at which time benefits were terminated without resumption.
The issues presented by this appeal and answer thereto are:
1. Is plaintiff totally and permanently disabled as a result of the injuries he received from the above mentioned accident or accidents while in the defendant's employ?
2. Did the trial judge properly deny defendant's request for a new trial?
3. Was Liberty Mutual Insurance Company's termination of plaintiff's weekly benefits arbitrary, capricious, or without probable cause so as to subject it to penalties and attorney's fees as provided for by LSA-R.S. 22:658?

PLAINTIFF'S DISABILITY
The plaintiff in a workmen's compensation suit need not prove the exact nature of his disability so long as he can show that he is suffering from such disability to a degree that he is prevented from performing his normal work duties. Wallace v. Spohrer-Pollard Contractors, 76 So.2d 312 (La.App. 2nd Cir. 1954).
As the Supreme Court stated in Bertrand v. Coal Operators Casualty Company, 253 La. 1115, 221 So.2d 816 (La. 1969):
". . . where there is proof of an accident and of a following disability without any intervening cause, it is presumed that the accident caused the disability."
The causal relation between the defendant's disability and his work related accident may be inferred whenever there is proof of an accident and an ensuing disability without the showing of an intervening cause. Gradney v. Vancouver Plywood Company, Inc., 299 So.2d 347 (La.1974); Johnson v. Travelers Insurance Company, 284 So.2d 888 (La.1973); Bertrand v. Coal Operators Casualty Company, supra.
This court held in Ardoin v. Houston Fire & Casualty Insurance Company, 235 So.2d 426 (La.App. 3rd Cir. 1970) that:
". . . in determining whether a claimant's disability is causally related to an accident, great weight attaches to the fact of a sudden change from a condition of health or ablebodiedness prior to the accident to one of disability immediately thereafter. Nixon v. Pittsburgh Plate Glass Company, 161 So.2d 361, 367 (La.App. 3rd Cir. 1964); Taylor v. Mansfield Hardwood Lumber Company, 65 So.2d 360 (La.App. 2nd Cir. 1953)."
As we have previously stated in Roberson v. Liberty Mutual Insurance Company, 316 So.2d 22 (La.App. 3rd Cir. 1975):
"The disability of a workmen's compensation claimant `is presumed to have resulted from an accident, if before the accident the injured person was in good health, but commencing with the accident the symptoms of the disabling condition appear and continuously manifest themselves afterwards, provided that the medical evidence shows there to be a reasonable possibility of causal connection between the accident and the disabling condition.' Bourque v. Monte Christo Drilling Corporation, 221 So.2d 604 (La.App. 3rd Cir. 1969). See also Porter v. Augenstein Construction Company, 280 So. 2d 861 (La.App. 3rd Cir. 1973); White v. E. A. Caldwell Contractors, Inc., 276 So.2d 762 (La.App. 3rd Cir. 1973); Freeman v. Standard Materials, Inc., 246 So. 2d 258 (La.App. 1st Cir. 1971)."
*468 The occurrence of plaintiff's work related accidents of October 29, 1973, and March 6, 1974, is not disputed. The fact is also apparent that for a period of at least two years preceding the first accident the plaintiff was able-bodied and in sufficient health to perform as a heavy laborer in the construction trade. The record in this case provides an adequate basis for a finding that Mr. Williams can no longer function as a construction laborer without considerable difficulty and pain.
While the medical evidence is not altogether consistent concerning plaintiff's disability, the trial judge was apparently convinced that a sufficient showing of disability had been made. Of the examining physicians who attended plaintiff after his last two accidents, Doctors Willis, Thomas, and Overdike would not certify him to return to his previous employment. Doctor Dean felt that plaintiff was not able to perform heavy manual labor as of his last examination on April 29, 1974. Only Doctor Gleason felt that plaintiff was not disabled. However, after his August 23, 1974, examination, this physician was not ready to permit plaintiff to return to construction work.
It is significant that Dr. Fred Willis, who treated plaintiff initially and who has continued as his attending physician since the accident, found on September 12, 1974, that Mr. Williams was disabled from doing any heavy work for an indefinite period of time. We find the rule stated in Babin v. Highlands Insurance Company, 290 So.2d 720 (La.App. 1st Cir. 1974) applicable to this situation:
"It is well settled that where the testimony of specialists in a workmen's compensation case is conflicting or indicates only limited disability, it is not error for the trial court to accept instead, and accord greater weight to the testimony of the treating physician, even though he is only a general practitioner, because of his much greater opportunities for observation over an extended period of treatment. Gates v. Ashy Construction Company, Inc., 171 So.2d 742 (3rd La.App. 1965), writ refused 247 La. 678, 173 So. 2d 542 (1965); Harris v. Argonaut Insurance Company, 142 So.2d 501 (2nd La.App. 1962)."
After reviewing the medical evidence and according it the proper weight we find a reasonable basis for the trial judge's finding of plaintiff's disability.
The defendant makes a strong attempt to show that plaintiff's disability was actually caused by a pre-existing degenerative spinal condition. While the evidence indicates that as early as 1969 Mr. Williams was suffering from a narrowing of the spinal interspace at the lumbar 5 level we find no merit in defendant's contention. The jurisprudence of this state stands firmly for the proposition that an employer takes an employee as he finds him and is liable to him for compensation even when the disabling accident was such only because of a pre-existing disorder in the employee. See Gatheright v. United States Fidelity and Guaranty Company, 267 So.2d 576 (La.App. 3rd Cir. 1972), writ refused 263 La. 612, 268 So.2d 675, and cases cited therein; and Harrell v. Delta Drilling Company, 251 So.2d 97 (La.App. 3rd Cir. 1971), writ refused 259 La. 896, 253 So.2d 221, and cases cited therein. See also the case of Clement v. Fidelity & Casualty Company of New York, 220 So.2d 575 (La.App. 3rd Cir. 1969) in which this court stated:
"The worker who is normally susceptible to disability from an accident is entitled to the full protection of the compensation statute, even though the same accident would cause little or no harm to a healthy worker. Nor is it important that the diseased or weakened condition might alone have eventually produced the disability. An employee's disability is fully compensable when precipitated by an industrial accident, even though *469 caused, also, by a contributing, pre-existing dormant physical condition, or predisposition. Parish v. Fidelity & Casualty Company of New York, 124 So.2d 234 (La.App. 2nd Cir. 1960), cert, denied, and citations therein."
Even if plaintiff's degenerative back condition pre-existed his accidents, the fact remains that he was able-bodied and relatively healthy preceding those occurrences. At the very least, it must be said that plaintiff's work-related injuries triggered or aggravated an already troubled back condition suffered by the plaintiff. Under these circumstances we must agree with the trial judge in his conclusion that the plaintiff is totally and permanently disabled as a result of the accidents in which he was injured while in the employ of Tidewater Construction Company.

DEFENDANTS' APPLICATION FOR A NEW TRIAL
In their application for a new trial the defendants allege that since the trial on the merits there has been a discovery of new evidence which they should be allowed to submit to the court. Defendants' basic contention is that at the time of the trial plaintiff was still under the care of Dr. D. F. Overdike and that since the trial, which was September 30, 1974, and after Doctor Overdike's deposition, which was September 23, 1974, said physician has changed his position concerning plaintiff's disability. Defendants assert that Doctor Overdike would now testify that plaintiff is no longer disabled, thus destroying a portion of the basis for the trial judge's finding of total and permanent disability. Defendants' request for a new trial is based upon LSA C.C.P. Article 1972, which reads:
"Art. 1972. Peremptory grounds
A new trial shall be granted, upon contradictory motion of any party, in the following cases:
(1) Where the judgment appears clearly contrary to the law and the evidence;
(2) Where the party has discovered, since the trial, evidence important to the cause, which he could not, with due diligence, have obtained before or during the trial; or
(3) In jury cases, as provided in Article 1814."
After the close of the trial on the merits, the note of evidence was left open so that the parties could obtain the depositions of two of the physicians and the insurance adjuster involved in this case. The depositions of Drs. Jackie D. Huckaby, Charles E. Cook, and Mr. Tom St. Germain were taken as late as October 8, 1974. However, the defendants made no attempt to request an opportunity to re-examine Doctor Overdike during that period. Nor did they seek an extension of the note of evidence to cover a subsequent deposition of that doctor, although they were fully aware that the plaintiff was still under his care. While it is true that the case was re-opened in February to allow the introduction of additional evidence pertinent to the medical expenses incurred by plaintiff, the determination of disability had already been made by that time. Thus even if the alleged change of opinion by Doctor Overdike could be considered "new evidence", we feel that the defendants failed to exercise due diligence as required by LSA C.C.P. Article 1972 in an effort to obtain this testimony while the note of evidence was still open.
We are also of the opinion that the purported evidence alluded to by the defendants does not constitute new evidence as contemplated by the above cited codal provision. If this were the case, an insurer would have grounds for a new trial every time a doctor changed his mind or there was another new medical opinion available. At the time of the trial, and on *470 the evidence submitted to the court (Doctor Overdike's deposition included) there was a sound basis for concluding that plaintiff was disabled. Doctor Overdike's opinion at that time was one of disability. We are also of the opinion that LSA C.C.P. Article 1972 applies to evidence which existed at the time of the trial, but which was only discovered after its conclusion. Such is not the case in this litigation, and we find no basis for overturning the trial judge's ruling denying defendants' motion for a new trial.
Furthermore, defendants are possessed with an adequate remedy to review the compensation award under LSA R.S. 23:1331 which provides that any change in status of the employee's condition may be reviewed at any time six months after the rendition of the original compensation judgment.

PENALTIES AND ATTORNEY'S FEES
Defendants contend from the outset regarding this issue that no demand was made upon them for resumption of compensation benefits prior to this suit, and therefore under LSA R.S. 22-658 the requisite sixty day period for resumption following demand has not lapsed. Thus defendants argue that they cannot be held liable for penalties and attorney's fees.
We find no merit in this contention. Once a demand for payments has been made and the payments are terminated with the insurer denying liability for compensation in the subsequent suit, it is not necessary for an employee to make a second demand and wait an additional sixty days before penalties and attorney's fees attach, should the employer or insurer's actions be arbitrary, capricious, or without probable cause. See Chavis v. Maryland Casualty Company, 307 So.2d 663 (La.App. 3rd Cir. 1975), writ refused 310 So.2d 854; Bushnell v. Southern Farm Bureau Casualty Insurance Company, 271 So.2d 267 (La.App. 3rd Cir. 1972); Smith v. Kelly Labor Service, 239 So.2d 685 (La.App. 4th Cir. 1970); Plaisance v. Collins Industries, Inc., 193 So.2d 816 (La.App. 1st Cir. 1966), writ refused 250 La. 274, 195 So.2d 149.
In his deposition, Mr. Tom St. Germain, the adjuster assigned to this case by Liberty Mutual Insurance Company, testified that he terminated plaintiff's weekly compensation benefits based upon the report received by him from Doctor Dean. Although the adjuster later received a bolstering report from Doctor Gleason, that second communication is irrelevant since it had no bearing on the state of mind of the adjuster at the time he decided to terminate compensation. The actions of an insurer in terminating benefits are to be judged only by the knowledge which it possessed at the time of termination. Roberson v. Liberty Mutual Insurance Company, 316 So.2d 22 (La.App. 3rd Cir. 1975); King v. Insurance Company of North America, 288 So.2d 878 (La.App. 3rd Cir. 1974); DeJean v. B. F. Trappey's Sons, Inc., 285 So.2d 297 (La.App. 3rd Cir. 1973).
Doctor Dean's letter is dated June 3, 1974, and is addressed to Liberty Mutual in Shreveport, Louisiana, attention "Tom St. Germain, Claims Adjuster". It reads in relevant part as follows:
"In answer to your letter concerning Simpson Williams, on his last examination of April 29, 1974, I felt that he should respond to the conservative treatment with some traction and mild analgesics.
I am unable to give any final disability at this time, however, I would expect him to have responded to conservative treatment at least within a period of 2-3 months from the time of his injury, which was 3/6/74." (Emphasis added)
*471 We are unable to discover any reasonable basis in Doctor Dean's letter to the adjuster for a conclusion that plaintiff would definitely have recovered to a degree sufficient to return to his prior activity as of the date compensation was terminated. This physician uses terms such as "should respond", "would expect him to have responded" and states that he is unable to give any final disability at that time. It is incumbent upon the insurer to make a reasonable effort to ascertain plaintiff's exact condition at the time which compensation benefits are terminated. See Chavis v. Maryland Casualty Company, supra, and numerous cases cited therein. We feel that Doctor Dean's letter is simply too vague and indecisive to support a good faith refusal to continue workmen's compensation benefits. Therefore we must disagree with the trial judge in his finding that Liberty Mutual Insurance Company was not arbitrary, capricious, or without probable cause in its decision to terminate Mr. Williams' benefits as of June 16, 1974.
The final issue before us is the amount of attorney's fees and penalties to be awarded plaintiff. In determining the amount of attorney's fees to be awarded, the relevant factors include the degree of skill of the attorney and the volume of work performed by him in prosecution and collection of the claim. See King v. Insurance Company of North America, supra, and Roberie v. Ashy Construction Company, 215 So.2d 857 (La.App. 3rd Cir. 1968). The litigation at bar required plaintiff's attorney to participate in no less than a half dozen depositions in addition to a trial on the merits. A number of these depositions were taken in a parish other than that in which the case was tried. We also take notice of plaintiff's attorney's expertise in this field and the subsequent value of his time in such matters. Therefore we find plaintiff's attorney's request of fees of $4,000.00 within the bounds of reason and hereby award that amount. See the cases of Ray v. Superior Iron Works and Supply Company, Inc., 284 So.2d 140 (La.App. 3rd Cir. 1973), writ denied, 286 So.2d 365 ($4,000.00); Bushnell v. Southern Farm Bureau Casualty Insurance Company, supra ($3,000.00); Scott v. Hartford Accident and Indemnity Company, 302 So.2d 641 (La.App. 3rd Cir. 1974) ($3,000.00). The $4,000.00 award herein granted is intended as compensation for all of attorney's services, including the trial and appeal involved in this matter.
The further award of 12% interest shall be applied from the date on which benefits were terminated (June 16, 1974), until date that such back payments are finally made current.
For the above and foregoing reasons the judgment of the trial court is affirmed insofar as it declares plaintiff to be totally and permanently disabled within the terms of the workmen's compensation act. The judgment of the district court is reversed insofar as it denies plaintiff recovery of statutory penalties and attorney's fees against Liberty Mutual Insurance Company, and it is hereby ordered that there be judgment in favor of plaintiff and against defendant Liberty Mutual Insurance Company, in the amount of $4,000.00 plus 12% penalties on weekly benefits which are overdue, until paid.
Costs of this appeal are assessed against defendants.
Affirmed in part, reversed in part, and rendered.
PAVY, J., concurs in the result.