DOMENGEAUX, Judge.
Plaintiff-appellee, Fannie Manuel, brought this action against Community Coffee Company, Inc., defendant-appellant, her former employer, to recover benefits for total and permanent disability under the Workmen’s Compensation Act. Defendant-appellant raised the plea of prescription which was referred to the merits and subsequently overruled. The trial judge found the plaintiff-appellee to be totally and permanently disabled as a result of a work-related accident while in the defendant-appellant’s employ and awarded her commensurate benefits under the act. From this judgment the defendant-appellant has appealed.
We affirm.
Defendant-appellant bases its appeal upon two contentions:
1. The accident which plaintiff contends was disabling occurred more than one year prior to the filing of this action, and her prosecution of said claim is barred by the prescriptive period set forth in LSA R.S. 23:1209; and alternatively:
2. Plaintiff is not totally and permanently disabled.
Plaintiff alleges that on August 7, 1973, while in the employ of the defendant, functioning as a saleslady, she fell on the concrete floor in the storeroom and that a number of boxes fell upon her, injuring her right leg.
She filed this suit on August 6, 1974. Defendant contends that the accident occurred more than one year prior to the filing of the suit.
Gerald Smith, defendant’s branch manager, testified that he felt the accident must have occurred between May 1 and July 31st of 1973 because he recalled that the plaintiff met him at the back door of the business establishment as he was returning from a route and told him of her fall. Mr. Smith testified that all of his salemen took their vacations between May 1st and July 31st and that he substituted for them while they were away. Thus he concluded that the accident must have occurred some time before August 1st, since after that time all of his salesmen would have been back on the job. We note, however, that Mr. Smith testified that he is out of the office most of the time promoting sales of his company’s product. Therefore it is highly possible that he was merely returning from one of his daily outings and became confused as to the exact date upon which plaintiff informed him of her accident.
Mr. Danny Moore, defendant’s bookkeeper, testified that he was under the impression that plaintiff’s accident occurred shortly after Mr. Smith returned from his first week of vacation which ended July 19th, 1973. However, under cross-examination he admitted that he might possibly be confused and that the accident could have occurred after Mr. Smith returned from his second week of vacation which ended August 6, 1973.
*364 Mrs. Soyna Devall stated that she saw plaintiff on the night of August 7, 1973, and that Mrs. Manuel complained of injuries to her leg which she had received in a fall that day at work.
Finally we have the testimony of Doctor Harry S. Snatic, plaintiff’s family physician, and his nurse, Rose Marie Quilty. Mrs. Quilty testified that plaintiff went to Doctor Snatic’s office on August 8, 1973, and stated that she had injured herself in a fall at work on the previous day. Doctor Snatic testified that he was under the impression, during the exam of August 8, 1973, that the plaintiff’s injuries had occurred on the previous day.
The plaintiff contends that at the time of the examination on August 8, 1973, by Doctor Snatic, there was no reason for her to falsify the date of her accident. At that time she was not contemplating a lawsuit and of course the problem of prescription had not entered into the picture. We find this appeal to logic and common sense ultimately persuasive, and after a careful study of the record we find a reasonable basis in the evidence to support the trial judge’s finding that the accident occurred on August 7, 1973, and not prior thereto.
On August 8, 1973, the day after the accident, plaintiff was examined by Doctor Snatic, a general practitioner, who had treated her for some twenty-seven or twenty-eight years prior thereto. At the time of that examination plaintiff complained of pain in both legs, the left hip, right arm, and further indicated pain behind the right knee where she stated that a falling box had struck her. Doctor Snatic prescribed medication and instructed plaintiff to refrain from working until her condition improved. Plaintiff returned to her job at Community Coffee Company, Inc. that day, and worked for approximately two months, after which time she terminated her relationship with her employer due to her inability to remain standing most of the day, which her job necessitated.
Plaintiff did not seek further employment, and on August 29, 1974, again sought medical assistance from Doctor Snatic. The physician found swelling in both of plaintiff’s legs, especially the right one. In the interim since his first examination of August 8, 1973, he had seen plaintiff a number of times in the hospital while she was visiting her injured son and noted that she was having difficulty with her legs, particularly the right extremity.
After the August 29, 1974 examination Doctor Snatic was of the opinion that plaintiff suffered from a disorder in the deep veins of her right leg which he felt was traumatically induced. When asked about the possibility of a causal link between plaintiff’s described accident and her subsequent venous disorder the doctor testified as follows:
“Q. Just one more question. Dr. Snatic, although it may be possible for deep vein obstruction to develop without trauma, given the fact of trauma, and given Mrs. Manuel’s prior history, would you conclude that in this case trauma caused her problems, deep vein
A. Yes, I would say so.”
Defense counsel unsuccessfully attempted to minimize the above testimony as follows:
“Q. That’s somewhat speculative though, is it not, doctor?
A. No, not since she had never had any problems prior to this accident. That’s the only reason I say that. Had she had problems with her leg prior to that, well, this could have come along as a course of a previous existing condition that she had that got progressively worse; but there’s no history as far back as I’ve treated her, and you’re free *365 to look at her chart from the beginning' of the time that I treated her, that she has never had a problem with her legs.”
Doctor Snatic referred plaintiff to Doctor John W. DiGiglia, a vascular surgeon, who examined her on September 24, 1974. Plaintiff’s chief complaint at that time was swelling in the right leg which she claimed was caused by a work-related accident. After examination Doctor DiGiglia concluded that plaintiff had no arterial or venous disease.
On December 13, 1974, plaintif was examined by another vascular surgeon, Dr. L. K. Moss. She told him that she had sustained an injury on August 7, 1973. Doctor Moss found no evidence of any injury and his exam was essentially negative. After a subsequent examination on April 9, 1975, Doctor Moss found some varicose veins behind plaintiff’s right knee and concluded that there was a possibility of injury to the deep veins in that area. Doctor Moss testified that the symptoms of a deep venous disorder could be diminished if a patient remained off his feet for several days prior to the examination. There is evidence that the plaintiff was bedridden for a period of four to five days prior to Doctor Moss’s initial examination, and thus said physician was of the opinion that the venous disorder could have existed at the time of his first examination.
¡When questioned as to the extent of plaintiff’s disability the following testimony was elicited from Doctor Moss:
“Q. Would you say that the condition which you found, this varicose vein condition, was disabling to Mrs. Manuel, which would prevent her from working?
A. Well, I would say at this particular time when I saw her, on the 9th of April, about a month ago, I think it was bothering her enough at that time to demand some getting off her feet and elevating them, and probably would keep her from a job, whatever it might be, for a few days, yes.”
The above testimony relative to the extent of plaintiff’s disability must be read in light of the fact that her job required constant standing and that she was never in a position to take a few days off in order to rest and elevate her feet.
In finding the plaintiff to be totally and permanently disabled the trial judge made the following statement:
“Considering all of the medical testimony, the Court concludes that the scales tip in Mrs. Manuel’s favor, however slight, but the Court does find that they tip in her favor, and the Court is going to find that she is totally and permanently disabled from doing the type of employment that she was doing at the time of this accident.”
While we find the evidence of plaintiff’s total and permanent disability less than overwhelming, we cannot say that the trial judge committed manifest error in finding that Mrs. Manuel sustained her burden of proof relative to this issue.
Defendant contends that plaintiff’s disabling injury could not have been caused by the blow from a single falling box. However, plaintiff testified that a number of boxes fell on her leg and that she also fell onto several boxes which were already on the floor. In addition, Doctor Snatic was of the opinion that a severe blow was not necessary to cause a deep venous disorder. He stated that the injury could have been caused by the stretching action of the fall itself which may have injured the lining of the vein, causing the formation of a blood clot.
Plaintiff had worked for a number of years in the defendant’s employ and received very high marks as an employee. There is no evidence that she had any difficulty with either of her legs prior to her accident, a fact substantiated by her *366 family physician, Doctor Snatic. Clearly, the plaintiff encountered great difficulty in prolonged standing after her accident. She was able to continue her work for a period of only about two months after the fall. See the recent case of Williams v. Liberty Mutual Insurance Company, 327 So.2d 462 (La.App.3rd Cir.1976) and numerous cases cited therein, in which we stated:
“The causal relation between the defendant’s disability and his work related accident may be inferred whenever there is proof of an accident and an ensuing disability without the showing of an intervening cause.”
Since plaintiff was relatively healthy for a long period prior to her accident and became disabled shortly thereafter, we find that she has adequately shown a causal connection between her accident and ensuing disability.
Defendant has filed, with this court, a motion to remand the case for the taking of additional testimony. The witness in question is one Joyce Ledoux, who the defendant states would testify in its favor.
The record reveals that this case was initially set for trial on April 24, 1975. At that time Mrs. Ledoux was subpoenaed by the plaintiff. The trial was refixed for May 7, 1975, at which time neither party subpoenaed the witness.
We find, under the recited circumstances, that defendant knew or should have known that Mrs. Ledoux was a potential witness and had sufficient time to discover her alleged testimony prior to the trial on the merits. .We therefore deny defendant’s motion to remand.
For the above and foregoing reasons the judgment of the district court is affirmed in all respects. Costs of this appeal are assessed against the defendant-appellant.

AFFIRMED.

GUIDRY, J., dissents and assigns reasons.