428 So.2d 1221 (1983)
Jason John KNOTT, Plaintiff-Appellee,
v.
WELLTECH, INC., et al., Defendants-Appellants.
No. 82-493.
Court of Appeal of Louisiana, Third Circuit.
March 9, 1983.
*1222 Onebane & Associates, Graham N. Smith, Lafayette, for defendants-appellants.
Domengeaux & Wright, Richard C. Broussard, Lafayette, for plaintiff-appellee.
Before STOKER, DOUCET and YELVERTON, JJ.
YELVERTON, Judge.
Plaintiff, Jason John Knott, was awarded worker's compensation benefits for total and permanent disability together with penalties and attorney's fees. Defendant-employer, Welltech, Inc., and its compensation insurer Liberty Mutual Insurance Company appealed. We affirm.
The accident happened in the oil field on August 29, 1980. Plaintiff, 19, was working on the "monkey board" on an oil rig. While pulling on a stand of pipe he felt pain in his testicles and lower back. The plaintiff reported the accident to his driller and at the end of the shift was taken to a doctor in Thibodeaux, Louisiana, who told him to return home and consult with his family physician. The plaintiff has not returned to work since the accident.
At trial the parties stipulated to his employment and the accident and that the compensation carrier had paid weekly benefits totaling $3,721.14 which were terminated on February 21, 1981.
The issues on appeal are the extent and duration of the disability and the award of penalties and attorney's fees.
The medical evidence consisted of the depositions of Dr. Ernest Yongue and Dr. Kenneth Adatto and the testimony of Dr. James McDaniel. We will address our attention *1223 first to a review of the medical testimony.
Dr. Yongue, a general practitioner, was plaintiff's treating physician. Plaintiff saw this doctor 32 times between August 30, 1980 and March 5,1982. On the initial visit Dr. Yongue found marked swelling with acute tenderness of the right testicle. His diagnosis was acute orchitis (inflammation of the testicle). The doctor said the pain was too severe for the plaintiff to note any other distress that he had. On the following visit (September 5, 1980) the orchitis was subsiding and plaintiff told the doctor about his low back pain. Dr. Yongue diagnosed a lumbosacral strain. On October 14, 1980 the orchitis was no longer present, however, plaintiff still suffered low back pain. The doctor found definite spasm and firmness of the muscles in the low back area and continued his diagnosis of lumbosacral strain. He felt the low back pain was severe enough to keep plaintiff from working and that work could cause an exacerbation of his condition and prolong his disability.
Beginning on November 4, 1980, plaintiff experienced a radiating pain down into his left hip and increasing pain in his back. During subsequent examinations pressure applied to the lumbosacral area caused a burning pain indicating pressure against the nerve. Dr. Yongue was of the opinion the accident strained a ligament which holds the joint together and damaged a disc which might eventually protrude and cause pressure problems on the nerves. The doctor stated plaintiff's condition was consistent with the history of the accident and that the plaintiff was and had been disabled continuously. On January 5,1981, Dr. Yongue sent Liberty Mutual Insurance Company a letter informing it of the persistency of plaintiff's symptoms and the suspected signs of a ruptured disc.
The plaintiff was examined by Dr. Kenneth Adatto on three occasions, initially on December 2, 1980. This examination revealed spasm and muscle tightness and Dr. Adatto diagnosed plaintiff's condition as a lumbar syndrome. On the next visit (January 6, 1981) muscle spasm was still present. He ordered an EMG and nerve conduction studies. The results of these tests were within normal limits. However, on June 11, 1981 (the third visit) the doctor observed increased spasm. The doctor could not give an explanation for plaintiff's continued spasm, but felt plaintiff could do work which did not require stooping, bending or lifting more than 20 pounds.
Dr. James McDaniel testified for the defendants. Liberty Mutual referred the plaintiff to him for two back examinations. On these examinationsone on February 23,1981, and the other on April 5,1982the doctor found no objective signs of injury. However, he stated that the plaintiff's subjective symptoms of radiating pain in his hip suggested sciatic nerve problems and that plaintiff's complaints were consistent with disc pathology. The doctor found no spasm on either visit. He further stated that the more a doctor sees a patient the better idea he will have of his problems. On the 1982 visit he recommended that a CAT scan and bone scan be performed because of plaintiff's continuing complaints.
The plaintiff testified at the trial on April 15, 1982, that he was still suffering pain in his lower back, hip and thigh. He stated that sitting and standing for a long time, and lifting and bending bothered his back. He did not think he could work in the oil field or at various other jobs about which he was questioned. He testified he had not participated in any strenuous activities since the accident such as hunting and fishing and did not think himself capable of such activities. He declared that he had a sharp burning pain in his back at present while at times he would experience almost no pain. Plaintiff's lack of activity since the accident and pain in his lower back were corroborated by the testimony of lay witnesses.
The defendants also offered the testimony of Eugene Ellison, an investigator for Equifax Claims Company. Mr. Ellison had been assigned to make a surveillance of plaintiff's activities. He followed the plaintiff for about a three to four day period and *1224 took a brief movie of him. Mr. Ellison testified that the movie captured the only period of physical activity witnessed during his surveillance. The trial court described the film as follows:
"... He showed a motion picture film of Jason wherein for about 51 seconds Jason is moving some crawfish in sacks onto a scale for weighing, then off the scale to a table. This movement of the crawfish sacks is horizontal and there is no bending, stooping, or real strenuous labor displayed, other than the normal movements. This Court finds no significance in these motion pictures."[1] (footnote ours)
In the present case the trial court accepted the testimony of the plaintiff and Dr. Yongue and concluded that the plaintiff was totally and permanently disabled due to his present condition and pain.
As this court stated in Kelly v. International Union Operating Engineers, 386 So.2d 1060 (La.App. 3rd Cir.1980):
It is well settled that an injured worker who suffers substantial pain in performing his former job or who cannot engage in any gainful employment without incurring substantial pain is disabled, either totally or partially. Phillips v. Dresser Engineering Company, 351 So.2d 304 (La.App. 3 Cir.1977), writ denied, 353 So.2d 1048 (La.1978); Rachal v. Highlands Insurance Company, 355 So.2d 1355 (La.App. 3 Cir.1978), writ denied, 358 So.2d 645 (La.1978); Whitaker v. Church's Fried Chicken, Inc., 387 So.2d 1093 (La.1980).
We note at the outset that physical inability to return to work and inability to return to work due to substantial pain are questions of fact. The determination of fact made by a trial court will not be disturbed when there is evidence before the court, which evidence, upon its reasonable evaluation of credibility, furnishes a reasonable factual basis for the trial court's findings, unless those findings are clearly wrong. Crump v. Hartford Accident and Indemnity Company, 367 So.2d 300 (La.1979).
Considering the testimony of Dr. Yongue and the plaintiff as to the severity of pain and to the possibility that work may exacerbate his condition, we cannot say that the trial court's finding of total permanent disability is clearly wrong.[2]
Regarding the claim for penalties and attorney's fees, the trial court found that Liberty Mutual had been arbitrary and without probable cause in terminating benefits. The basis for the lower court's decision is stated as follows in the trial judge's written reasons for judgment:
"It is not clear to the Court why compensation benefits were terminated on February 21, 1981. While it is true that Dr. McDaniel gave an ambiguous report that he saw no reason why Jason could not work because of the objective findings, this is not a sufficient reason. The employee and his insurer were in possession of contradictory information at that time. In his February 1981 report, Dr. McDaniel said:
`IMPRESSION: This patient presents with essentially a normal orthopedic *1225 examination and x-ray evaluation. The symptoms the patient gives with the exception of the buttock pain are suggestive of a lumbar strain. This type of injury I find it somewhat surprising this patient has not responded to the conservative treatment protocol. I doubt seriously whether this patient has any type of disc injury. I feel the ENG [sic] and nerve conduction studies will be normal. Based on this examination, I do not see any reason why this patient should not be able to return to his former work.'
"This report is clearly insufficient to authorize the insurer to terminate workmen's compensation benefits that are clearly due."
A trial court's conclusion with regard to assessment of penalties and attorney's fees under LSA-R.S. 22:658 is in part a factual determination which should not be disturbed on appeal in the absence of a finding that it is manifestly in error. Cameron State Bank v. American Emp. Ins. Co., 401 So.2d 1090 (La.App. 3rd Cir.1981), writ denied 409 So.2d 674 (La.1981).
In the similar case of Hutchinson v. T.G. & Y. Stores Company, 412 So.2d 708 (La. App. 3rd Cir.1982), this court stated:
Additionally, appellant contends that there is insufficient evidence to justify the award of penalties and attorney's fees. The record discloses that plaintiff reported her injury to her employer the next work day following its occurrence. Thereafter she was seen by Drs. Guidry, McDaniel, and Blanda and the employer paid such medical expenses until the examination by Dr. Webre. Following her visit with Dr. Webre all benefits were terminated, due to said physician's belief that, as there were no specific clinical findings, plaintiff should return to work. Thereafter, plaintiff requested her benefits be reinstated, and upon refusal of said request she retained an attorney who also demanded benefits be reinstated.
It is well established that injured employees may not be denied compensation on the basis of inconclusive medical reports. Alexander v. Dept. of Culture, Recreation and Tourism, 410 So.2d 1286 (La.App. 3rd Cir.1982); Wiley v. Southern Casualty Insurance Co., 380 So.2d 214 (La.App. 3rd Cir.1980); Norris v. Southern Casualty Insurance Co., 342 So.2d 874 (La.App. 3rd Cir.1977), writ denied, 344 So.2d 670 (La.1977). Not only was Dr. Webre's report inconclusive, but it was also contraindicated by plaintiff's continued supervision by Drs. Guidry and Blanda. Although Dr. Webre may possess more expertise than plaintiff's general practitioner, Dr. Guidry, great weight should be given to testimony of the treating physician who has a greater opportunity to examine and maintain a continuing monitoring of the patient's condition. Williams v. Liberty Mutual Insurance Co., 327 So.2d 462 (La.App. 3rd Cir.1976).
In the present case we find Dr. McDaniel's February 1981 report to be ambiguous and inconclusive. Such report was also contraindicated by Dr. Adatto's examinations as well as by the continued supervision of Dr. Yongue. Under these circumstances we cannot say that the trial court committed manifest error in its award of penalties and attorney's fees.
Plaintiff's attorney has asked by way of reply brief that the award of attorney's fees be increased for the defense of the instant appeal. However, since plaintiff did not timely appeal or answer the appeal by the defendants as required by LSA-C.C.P. art. 2133 this court is not at liberty to grant the increase prayed for. Gour v. Daray Motor Co., Inc., 373 So.2d 571 (La.App. 3rd Cir.1979), writ granted 376 So.2d 1270 (La.1979), writ dismissed 377 So.2d 1033 (La.1979); Richard v. Standard Fittings, 379 So.2d 33 (La.App. 3rd Cir. 1979).
For the foregoing reasons the judgment of the trial court is affirmed. All costs of this appeal are to be borne by the defendants-appellants.
AFFIRMED.
NOTES
[1] The film was shown to this court during oral arguments. We agree with the trial court's evaluation of its probative significance. Furthermore, evidence in the form of moving pictures must be used with great caution because such pictures show only very brief intervals of the activities of the subject. Glover v. Southern Pipe & Supply Co., 408 So.2d 352 (La.App. 4th Cir.1981), writ denied 412 So.2d 86 (La. 1982). As stated in Glover, supra, such movies "do not reflect whether the subject is suffering pain, and they do not show the after-effects of such activities." In the present case the movie showed very brief and not particularly strenuous activity on the part of the plaintiff. Dr. McDaniel stated such activity would not negate the possibility of a herniated disc.
[2] Appellants also argue in the alternative that plaintiff's disability is temporary and not permanent. We disagree. The criterion to determine whether disability is temporary or permanent is claimant's condition at the time of trial. Since the evidence shows that plaintiff was totally disabled at the time of trial and the evidence does not clearly indicate the duration, the trial court was correct in finding the plaintiff totally and permanently disabled. See Glover, supra in footnote 1.